## J. M. HARRELL, COUNTY ATTORNEY, ET AL. v. J. H. LYNCH ET AL.

(Case No. 1897)

1. COUNTY SEAT—REMOVAL—ACTS OF 1875 AND 1879.—*Ex parte* Towles, 48 Tex., held that section 4 of the act of 1875, giving the district and supreme courts jurisdiction over contested elections for the location of county seats, was unconstitutional and the entire act void, since it was not intended to effect the removal of county seats, unless the contest provided for could be had.

2. SAME.—*Ex parte* Whitlow held that section 10 of the act of 1879 attempted to confer the same unauthorized jurisdiction, and was also unconstitutional.

3. SAME—INTENT.—Since the act of 1879, without section 10, would accomplish the object of the law required by the Constitution of 1876, viz., a regulation of the manner of removing county seats, then, though the right of contesting the election would not exist, it can be fairly inferred that it was the intention of the legislature, already advised of the invalidity of section 10, that the other parts of the law should be enforced.

4. SAME.—The legislature framed the act of 1879 so as to give the voters the right of contest, if *ex parte* Towles should be overruled; and if it should be adhered to, the right of contest would be denied, but a valid law would be in force in obedience to the constitution. It was intended that the other sections should be enforced, even if section 10 was invalid; and these other sections amply provide the means of accomplishing the law.

5. REMOVAL OF COUNTY SEAT—DAMAGES—EQUITY.—Voters in a county have, in the location of a county seat, no such interest as will form the basis of a suit. (*Ex parte* Towles and Walker *v.* Tarrant Co.) As a man has no property right in the location; an unlawful removal deprives him of no right; and the depreciation in the value of his property is not a wrong for which equity, in the absence of a legal remedy, will give redress.

APPEAL from Bowie. Tried below before the Hon. W. P. McLean.

This proceeding was a bill for an injunction filed by appellees to restrain the appellants, who were the county officers of Bowie county, from removing their offices and archives, records, books, papers, etc., from Boston, Bowie county, Texas, to Texarkana, in that county, which the bill alleged they were unlawfully about to do in consequence of, and in obedience to, an order of Jno. J. Bell, county judge of Bowie county, by him entered on the records of the commissioners' court, adjudging and ordering "that the county seat of Bowie county be and is hereby removed from its present location at Boston, to Texarkana, Bowie county, Texas." The bill alleged in substance:

1st. That plaintiffs were residents of Boston, Texas, and owned real and personal property in the town of Boston, and in the county of Bowie, and were citizens and taxpayers in that county.

2d. That on August 10, 1885, a petition was presented to the county judge, signed by two hundred free-holders, praying for an order for an election to move the county seat from Boston to New Boston; that on August 15 an order for such election was made by the county judge, to be held on Thursday, September 24, 1885; that on that date such election was held in Bowie county, and that on September 28, thereafter, the county judge opened the returns and estimated and declared the result, which was as follows:

For removal to Texarkana, 2,551 votes; for removal to New Boston, 626 votes; for removal to Petty's Ferry, 1 vote; for removal to Jim Hubbard, 1 vote; for remaining at Boston, 499 votes; making a total of 3,678 votes; and thereupon entered up his order and judgment declaring that Texarkana had received more than two thirds of the votes polled, and ordering that the county seat of Bowie county, "be. and is hereby removed from its location at Boston to Texarkana, Bowie county, Texas," etc.

5th. That the result of the election was obtained by various frauds alleged to have been committed in Texarkana and precinct No. 1, in which Texarkana was and is situated.

6th. That plaintiffs were induced to purchase real property at Boston on account of its being the county seat of Bowie county; that such property was worth $10,000, and if the county seat was moved it would be thereby depreciated in the sum of $5,000; that plaintiffs were all tax-payers in Bowie county; that the county jail and court-house (of the value of $7,000) would be rendered worthless to the county, and new public buildings would have to be erected at great expense to the taxpayers, etc.

7th. That the defendants, the county officers, were about to remove

their offices, etc., and prayed for an injunction restraining them from so doing, and on final hearing for a decree perpetuating such injunction; that the petition, orders of the county judge, election and all proceedings thereunder, be declared null and void, and for general relief.

The injunction was granted upon the plaintiff's making of a bond in the sum of $500. The defendants appeared and filed, first, a plea to the jurisdiction of the court by demurrer, which was overruled by the court. Defendants then filed a general demurrer to the bill, which was also overruled, and the court rendered final judgment perpetuating the injunction.

*Estes & Henry, Tilson & Henderson, Todd & Hudgins, D. T. Leary, W. W. Dillard, O. C. Porter, J. M. Talbot, H. C. Hynson, R. D. Harrell,* for appellants, cited: Const. of Tex., art. 9, sec. 2; Acts of 1875, p. 87 et seq.; Act of April 10, 1879, R. S., app., p. 22; W. U. Tel. Co. v. State, 62 Tex., 630; Baker v. Chisholm, 3 Tex., 157; Alley v. Denson, 8 Tex., 297; Asberry v. Beavers, 6 Tex., 457; Walker v. Tarrant Co., 20 Tex., 16; Wright v. Faucett, 42 Tex., 203; Rogers v. Johns, 42 Tex., 339; *ex parte,* Towle, 48 Tex., 413; Williamson v. Lane, 52 Tex., 344; *ex parte,* Whitlow, 59 Tex., 273; Gibson v. Templeton, 62 Tex., 555; State ex rel Jennett v. Owens, 63 Tex., 261; Newton v. Com'rs., 100 U. S., 548; Fearing v. Irwin, 55 N. Y., 486; Wilkinson v. Cheatham, 43 Ga., 258; Howes v. Grush, 131 Mass., 207; Sanders v. Metcalf, 1 Tenn. ch., 419; Maize v. State, 4 Ind., 342; Santo v. State, 2 Ia., 165; Weir v. Cram, 37 Ia., 649; Wilson v. Leslie, 20 Ohio, 173; Cooley Const. Lim., 192, 195, 196, 197, 211 et seq.; 2 High on Inj., 2 ed., secs 1257, 1258, 1316, 1321.

*M. L. Sims* and *John L. Sheppard,* for appellees, on jurisdiction, cited: Const. of the State, sec. 8, art. 5, sec. 2, art. 9, sec. 56, art. 3, sec. 48, art. 16; County of Anderson v. Kennedy, 58 Tex., 616; Purvis et al. v. Sherrod, 12 Tex., 140; Fort Worth v. Davis, 57 Tex., 236; *ex parte,* Whitlow, 59 Tex., 273; 2 High on Inj., 2 ed., arts. 1308-9, 1319, 1321, 1327, 1257-8; McCrary on Elect., 2 ed., art. 458; Bosen v. Smith et al., 47 Ill., 482; 3 Wait's Acts. and Def., 749, (title, public officers); 3 Wait's Acts. and Def., 680, et seq. (title, injunction); Fowler et al. v. Brown et al., 5 Tex., 407-8; Alley v. Dinson, 8 Tex., 299; Cooley on Const. Lim., 2 ed., 227.

On constitutionality, they cited: Const. of the State, 1876, sec. 2, art. 9; Const. of the State, 1874, sec. 40, art. 12; Bill of Rights, secs. 13, 19, 29; Acts Leg. 1879, R. S., app., p. 22; Acts Leg. 1875, 87;

Acts Leg. 1838, Pas. Digest, art. 1067; *ex parte*, Towle, 48 Tex., 413; Williamson *v.* Lane, 52 Tex., 335; city of Fort Worth *v.* Davis, 57 Tex. 236; *ex parte*, Whitlow, 59 Tex., 273; Gibson *v.* Templeton, 62 Tex., 557; State ex rel. Jennett *v.* Owens, 63 Tex., 261; Owens *v.* State ex rel. Jennett, Tyler Term, 1885; W. U. T. Co. *v.* State, 62 Tex., 630; Cooley's Const. Lim. 2 ed., 214, 215, 216, 217, 218; Warren et al. *v.* Mayor and Aldermen of Charleston, 2 Gray, 84.

ROBERTSON, ASSOCIATE JUSTICE.—It was claimed by the appellees in the court below that the removal of the county seat of Bowie county from Boston to Texarkana was not effected by the election of September 24, 1885, on two grounds: first, that illegal votes and fraud produced the majority counted for Texarkana in that election; and second, that the law under which the election was held was unconstitutional and void. Upon the latter ground, without reference to the former, the court below rendered a decree perpetuating upon the petition of appellees an injunction restraining appellants, the county officers of Bowie county, from transferring their offices and the county records and archives to Texarkana. On this appeal the appellants contend that the law under which the election was held was constitutional, and that the district court of Bowie county was without power to question the declared result of that election.

The theory upon which the court below held, and on which the appellees here contend that the act of April 10, 1879, under which the election was had, is repugnant to the constitution, is that section ten of that act being manifestly void upon the authority of *ex parte* Towle, 48 Tex., and *ex parte* Whitlow, 59 Tex., there is not enough of the law left to effectuate the object of the law, or that section ten forms so material a part of the act that the legislature would not have passed it if the invalidity of that section had been anticipated. It was upon this theory that the act of March 13, 1875, also providing for the removal of county seats, was held to be repugnant to the constitution in *ex parte* Towle.

The third section of the act of 1875 provided that the result of the county seat election authorized by the act should be ascertained by the presiding justice of the county and declared in a certificate, and that this certificate should be *prima facie* evidence of the truth of the matters therein stated. What was to be done with the certificate was not provided. It was not given the force and effect of a declaration, political or judicial, that the object of the election, the refusal to remove, or the removal of the county seat, had been accomplished, but only in any proceeding or inquiry in which the result of the

election should come in question the certificate of the presiding justice should be "*prima facie* evidence of the truth of the matters therein stated." In the enactment of this section it was evidently contemplated, from the excitement attending such elections in the past, and the dissatisfaction with the result manifested by appeals to the courts in every form suggested by the learning of counsel, and on every ground imaginable in law, that the contest provided for by the fourth section would be instituted in every case in which it was authorized. This contest was to be had in the first instance in the commissioners court, but it was provided that it could be had *de novo* on appeal, and on some contingencies, originally, in the district court. An appeal was also given from the district to the supreme court, and until the final adjudication of the contest the county seat was required to "remain at the place antecedently fixed by law." It was held that the jurisdiction attempted to be conferred by the act upon the district and supreme courts could not be exercised by those courts under the constitution, and that the provisions of the act were insufficient, and not intended to effect the removal of the county seat unless the contest provided for could be had. The entire act was therefore void.

The opinion in the Towle case was not delivered until February 7, 1878, and the result of that case was that there was no law in force regulating the removal of county seats. The constitution (art. 9, sec. 2) required the legislature to pass laws "regulating the manner of removing county seats." The legislature passed no such laws at its first session under the constitution of 1876, for the reason doubtless that the act of 1875 was considered all the legislation needed. But at the next session of the legislature, the Towle case having disclosed the necessity of legislation in obedience to the constitution, the act of April 10, 1879, was passed.

All doubt should be eliminated from the conviction that the later enactment has repealed, rather than cured, the fault in the act of 1875, before we could properly declare the act of 1879 void. That section ten of the act of 1879 is unconstitutional was held by this court in *ex parte* Whitlow, on the authority of the Towle case. This section and section four of the act of 1875 attempt to confer upon the district and supreme courts precisely the same unauthorized jurisdiction. The two sections of the acts in the unconstitutional feature are so nearly identical as to exclude the idea that the legislature believed that one could be void and the other valid. If the legislature had re-enacted the act of 1875, in one view the re-enactment might have been valid, though the original act was void, as the re-enactment

would not be considered a reiteration of the validity of the law, but as a declaration of the intention of the legislature that such parts of it as were not repugnant to the constitution should be enforced without regard to the void provisions. The void provisions of the act of 1875 were held to taint the entire act. The same void provisions are re-enacted in section ten of the act of 1879, but if the act without section ten would accomplish the object of the law to regulate the manner of removing county seats, then, though the right of contesting the election would not exist, it would be fair to infer that it was the intention of the legislature, already advised of the invalidity of section ten, that the other parts of the law should be enforced. In these other parts the act of 1879 is a decided improvement on that of 1875. Section four of the later act provides that the officer ordering the election shall "declare the result," which shall be entered upon the records of the commissioners' court, and shall state the name of the place from and that to which the county seat is removed, and a certified copy of this "entry" is required to be recorded in the registry of deeds. Section five then provides that where this "entry" is made the county seat shall be removed to the place elected, and "such place shall thereafter be the county seat of such county." The Towle case was decided by a divided court.

The legislature so framed the act of 1879 as to give the voter the desirable right of contest if that case should be overruled, a possibility the more considerable, as the author of the opinion in the Towle case had ceased to be a member of this court. If, on the other hand, the Towle case should be adhered to, the right of contest would be denied, but a valid law would be in force in obedience to the mandate of the constitution. Our conclusion is that it was the purpose of the legislature that the other sections of the act of 1879 should be enforced whether section 10 was valid or not, and that these other sections amply provide the means of accomplishing the object of the law.

Appellees also complained that the declared result of the election was brought about by fraud and illegal votes, and, as there is no remedy at law, they have invoked the jurisdiction of equity to grant them relief from the wrongs about to be inflicted through the forms of law. The threatened wrong is the removal of the county seat. In the Towle case, and in the case of Walker v. Tarrant Co., it has been held by this court that voters in a county have in the location of the county seat no such interest as will form the basis of a suit or action. In the Towle case this court volunteered the suggestion of a means by which such litigable interest could be created by law. The sug-

gestion was never acted upon. As no man has a property right in the location of the county seat, its unlawful removal (no more than a trespass upon the court-yard) gives him no cause of action. Being deprived of no right, the depreciation in the value of his property is not a wrong for which a court of equity, in the absence of a legal remedy, would invent the means of redress. A valid law authorized the election, the election has been held, the agents appointed to ascertain and declare the result have performed that duty. This accomplishes the fact, and the law here ends the controversy. If a wrong has been done, the usurpation of the power to prescribe a remedy would be a still greater wrong.

The judgment of the court below must be reversed, and as nothing is left in the case for further litigation, the cause will be dismissed.

REVERSED AND DISMISSED.

[Opinion delivered November 6, 1885.]