

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00445-CV

Jimmy and Cheryl **WILLIAMS**, et al.,
Appellants

v.

**GUADALUPE-BLANCO RIVER AUTHORITY** and its Officers and Directors, et al.,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 19-2054-CV
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: July 7, 2021

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

This appeal comes before this court after the trial court's partial denial and partial grant of appellee's plea to the jurisdiction based on standing and sovereign immunity. The trial court partially denied the plea (as to appellants' constitutional and statutory takings claims) and partially granted the plea (dismissing all other claims). Because appellants lack standing on the record before us, we reverse the trial court's judgment on appellants' takings claims, affirm the trial court's dismissal of all other claims, and remand for further proceedings consistent with this opinion.

**BACKGROUND**

In 1933, the Texas Legislature created the Guadalupe-Blanco River Authority ("GBRA") to "develop, conserve and protect the water of the Guadalupe and Blanco Rivers." Act of October 12, 1933, 43rd Leg., 1st C.S., Ch. 75, 1933 General and Special Laws of Texas 198, as amended (Vernon's Ann. Tex. Civ. Stat. art. 8280-106). Between 1928 and 1932, six hydroelectric dams ("hydro dams") were privately constructed and put in service in the Guadalupe River Valley in Comal, Guadalupe, and Gonzales Counties. Construction of the hydro dams resulted in the formation of six lakes: Meadow Lake and Lakes Placid, McQueeney, Dunlap, Wood, and Gonzales. In 1963, GBRA acquired the six hydro dams.

The six hydro dams collectively contain a total of fifteen spill gates. On March 15, 2016, one of the spill gates at the Lake Wood dam failed. The failure resulted in the sudden discharge of water and the draining of Lake Wood, which has remained empty. On May 14, 2019, one of the spill gates at the Lake Dunlap dam likewise failed. The second failure resulted in the draining of Lake Dunlap to the original river channel.

As a result of these failures, GBRA announced its intent to perform a "systematic drawdown" of the remaining four lakes, beginning at Lake Gonzales and then moving upstream to Meadow Lake, Lake Placid, and Lake McQueeney. According to GBRA, this was necessary because the hydro dams were past their useful lives and the failure of the remaining four dams was imminent. Appellants—owners of properties adjacent to the lakes—sued GBRA (and its officers in their official capacities) for injunctive relief to prevent the announced drawdown, declaratory relief, and damages.[1] According to appellants, Guadalupe County Appraisal District assessments

---

[1] For brevity, GBRA refers to both GBRA and its officers and directors in their official capacities.

reflect diminishment of adjacent property values between 28% and 35% due to GBRA's announcement.

On August 20, 2020, the trial court heard GBRA's plea to the jurisdiction. The trial court (1) denied GBRA's plea as to appellants' claims for takings under the Texas Constitution (constitutional taking) and Chapter 2007 of the Texas Government Code (statutory taking) and (2) granted GBRA's plea as to all other claims, dismissing them with prejudice. All parties appealed.

## STANDARD OF REVIEW

To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). A plaintiff also bears the burden of establishing a waiver of sovereign immunity in suits against the government. *Id.* A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Id.* at 160; *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.).

Our de novo review looks to the pleader's intent and construes the pleadings in its favor. *Houston Belt*, 487 S.W.3d at 160. But where a defendant presents evidence to challenge the existence of jurisdictional facts, as here, we are "not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Shady Shores*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). That is the case even when "jurisdiction and the merits intertwine." *Id.* (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018)). When a plea to the jurisdiction challenges the existence of jurisdictional facts with supporting evidence, as here, the

standard of review mirrors that of a traditional summary judgment: all the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Id.* (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004)).

**STANDING**

Standing requires a plaintiff to establish: (1) the plaintiff's claimed injury is "both concrete and particularized and actual and imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the defendant's challenged action"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). GBRA challenges the existence of the first element—a particularized injury.

"Generally, a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011). Unless standing is conferred by statute, a plaintiff must demonstrate possession of an interest in a conflict distinct from the general public, such that the defendant's actions have caused the plaintiff some particular injury. *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001).

GBRA asserts appellants lack standing because they cannot demonstrate a particularized injury. "An injury is 'particularized' for standing purposes if it 'affect[s] the plaintiff in a personal and individual way.'" *Data Foundry*, 620 S.W.3d at 696. The primary standing issue here is whether GBRA's decisions regarding operations of the hydro dams resulted in particularized injuries to appellants. Four binding authorities bear on this issue.

*Applicable Law*

In *San Antonio Conservation Society v. San Antonio*, the court held that riverfront landowners challenging the construction of a bridge lacked standing. 250 S.W.2d 259, 263–64

(Tex. Civ. App. 1952, writ ref'd).[2] The landowners argued they enjoyed rights beyond those held by the general public; specifically, the right to avoid traffic congestion resulting from construction of the bridge and the right to have their view kept open. *Id.* at 264. The court held these conditions are not specific to the landowners; rather, they are suffered by the public. *Id.* With respect to traffic, the *nature* of the wrong, injury, or damage—not their *extent*—controls. *Id.* Because any member of the public using the roads would be affected by increased traffic, the injury is not particularized to the landowners. *Id.* The court further stated:

> The same reasoning applies to other so-called special injuries of which appellants complain, such as the right to view the unmarred beauty of the river and to saunter along its banks. Proximity to the river and parks along its banks does not determine the character of appellants' interests as being justiciable or not. The interests which they seek to protect are the same whether they are used or enjoyed must [sic] or little or none. The only interests which appellants alleged in the river and parks is the right of enjoyment. This interest is common to all the people of San Antonio, those who avail themselves of the privilege as well as to those who do not or cannot.

*Id.* Lacking a particularized injury, the riverfront landowners lacked standing to challenge the bridge's construction.

In *City of West Lake Hills v. State ex rel. City of Austin*, thirteen individual homeowners alleged that a "buffer zone" created by the City of West Lake Hills's annexation of the area surrounding the homeowners acted as a "noose" that diminished the value of their property. 466 S.W.2d 722, 726 (Tex. 1971). According to the homeowners, their property diminished in value because, as a result of the noose, they could not be annexed by Austin (and receive Austin city services). *Id.* at 727. The Court rejected the homeowners' standing, stating that private parties "must suffer some burden peculiar to [themselves] to acquire standing to sue," and that "no action

---

[2] "Cases where an application for writ of error was filed after 1927 bearing the notation 'refused' 'carr[y] the imprimatur of Texas Supreme Court precedent.'" *Data Foundry*, 620 S.W.3d at 698 n.3.

lies by the individual to restrain an interference with the public interest." *Id.* Because the City of West Lake Hills "imposed no burden upon these property owners by taxation or otherwise," the Court determined that the homeowners lacked standing. *Id.* That is, the homeowners lacked standing because the City of West Lake Hills's annexation of adjoining areas did not constitute a sufficiently particularized injury to the encircled homeowners.

In *Texas Dept. of Transp. v. City of Sunset Valley*, a landowner alleged that floodlights installed on a new highway shone so brightly on his property that they "destroy[ed] its rural character" and created a "spot light effect." 146 S.W.3d 637, 647 (Tex. 2004). The floodlights were constructed on land owned by the State, not the landowner. *Id.* at 645. The Court explained:

> [N]ot every deleterious impact on private property amounts to a compensable taking. Instead, property impacts resulting from the construction of public works are compensable only to the extent they are not common to the community at large. Here, Cowan testified that the lights shine "into [his] neighborhood and [his] neighbors' property," and his pleadings also suggest that the lights similarly affect others in the community. While the proximity of Cowan's property to Highway 290 may increase the degree of the lights' impact on his property in comparison to its impact on other properties in the area, that fact alone does not suffice to render his injuries constitutionally compensable.

*Id.* at 647–48.

In *Harrell v. Lynch*, the Court rejected plaintiffs' standing in a lawsuit seeking to invalidate the movement of a county seat from the city of their residence to another city. 65 Tex. 146, 149–50 (1885). Notwithstanding a reduction in property values, because the plaintiffs maintained no property right in the location of the county seat, its movement to another city cannot confer standing on plaintiffs. *Id.* at 152.

### Analysis

Appellants complain about aesthetic and recreational losses, but these complaints—suffered by the public at large—are barred by *San Antonio Conservation Society*. 250 S.W.2d at

263–64. Additionally, appellants do not plead that GBRA's decisions resulted in a physical invasion of their lake-adjacent properties, such as by water *flooding* their properties because of GBRA's decision to open spill gates. To the contrary, appellants seek relief from diminished market values of their lake-adjacent properties because of water incidentally *receding* from the edge of their properties due to GBRA's decisions concerning the operation of the hydro dams. These facts are analogous to the facts in *West Lake Hills*, *Sunset Valley*, and *Harrell*.

*West Lake Hills* forecloses standing premised on diminishment of appellants' property values due to actions directly affecting only GBRA's property (i.e., the hydro dams, lands underlying the lakes, and water rights). 466 S.W.2d at 727. *Sunset Valley* clarifies that even deleterious impacts on adjoining properties are only compensable to the extent they do not affect the "community at large"—that is, appellants are required to show an injury particular *to them* apart from the community at large. 146 S.W.3d at 647–48. Applying the appropriate standard of review, the pleadings and record here disclose that appellants seek relief regarding only injuries sustained by the community at large. *See id.*

Applying *Harrell*, appellants cannot demonstrate a particularized injury absent ownership of a property right in property directly affected by GBRA's operational decisions, i.e., a property right in (1) the hydro dams, (2) the lands underneath the lakes, or (3) the water itself. 65 Tex. at 152. The uncontroverted record, through affidavits and expert reports introduced by GBRA, demonstrates that GBRA owns each of these three property rights.

Absent a genuine issue of material fact on appellants' ownership of a property right in the hydro dams, the lands underlying the lakes, or the water itself, appellants cannot show a particularized injury apart from the community at large. *See Shady Shores*, 590 S.W.3d at 550; *Texas Dep't of Parks & Wildlife*, 133 S.W.3d at 227–28; *see also Harris v. Strawbridge*, 330 S.W.2d 911, 915 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.) (conveyance requires

"operative words or words of grant showing an intention by the grantor to convey title to land which is sufficiently described to the grantee"); TEX. WATER CODE § 11.121 (no person may appropriate state water or construct works to take, store, or divert it without a water right from the Texas Commission on Environmental Quality). Because appellants did not establish they were affected in a "personal and individual way," they lack standing. *See Data Foundry*, 620 S.W.3d at 696, 700. We need not reach any other issue. *See* TEX. R. APP. P. 47.1.

Because appellants lack standing on this record, we reverse the trial court's judgment on appellants' takings claims, affirm the trial court's dismissal of all other claims, and remand for further proceedings consistent with this opinion.

Lori I. Valenzuela, Justice