### SKROBARCEK et ux. v. STEPHENSON et ux.

#### No. 12403.

Court of Civil Appeals of Texas.
San Antonio.

May 7, 1952.

John M. Stafford, Kingsville, Beacham, Berg & Campbell, Corpus Christi, Baskin, Casseb & Casseb, San Antonio, for appellants.

Gus Kowalski, Kingsville, Lloyd & Lloyd, Alice, for appellees.

POPE, Justice.

This is a child custody suit wherein the court denied custody to the natural mother on the grounds that such custody would disrupt the well-established adjustments made by the child in another home.

The trial court made findings of fact that both appellants and appellees are fit and proper persons. The court further found that a change of custody from the appellees' home, which they have provided for the child for many years, would be detrimental to the child's welfare, and refused to disrupt the long existing relationship. We have examined the statement of facts in detail. It shows that Mrs. P. J. Skrobarcek is the natural mother of the five-year-old child named Frank Edgar Lucas, who was born of a previous marriage by her to Meredith Lucas. The natural father is not a party to this suit. Mrs. Skrobarcek divorced her former husband in 1948, after a separation for more than a year. The child here in controversy was born in December of 1946 and was the youngest of three children born of the prior marriage. When the baby was only five months old, the mother separated from her then husband and took the baby to Sweeny, Texas. Her husband followed her there, brought the baby back to Kingsville, and placed him with Mr. and Mrs. Stephenson, and the child lived with them without interruption from May of 1947 to November, 1951. Mrs. Stephenson is a sister to the child's natural mother. Mrs. Skrobarcek placed her other two children with two other sisters, and contends that Mr. and Mrs. Stephenson, as well as her other sisters, agreed to return the children to her. The other two sisters within recent months did return to Mrs. Skrobarcek the children they were caring for. Mr. and Mrs. Stephenson permitted the Skrobarceks to take Frank Edgar Lucas into their home for a short visit, and when they refused to return him the Stephensons filed this suit.

In February, 1950, the mother married P. J. Skrobarcek, who has been a good husband, has provided well and is highly regarded in the community. They are happily married, own their own home, and are in a position to furnish the normal physical needs of the child. The trial court's findings that they are fit and proper persons is supported in the evidence, as is the other finding that Mr. and Mrs. Stephenson are fit and proper persons.

When the baby was delivered to the Stephenson home in 1947, he was sick, almost to the point of death. The Stephensons furnished him every care and nursed him back to health. Through the years they have spent more than a thousand dollars on medical expense maintaining the health of the baby. Every normal need of the child has been furnished from the hand and heart of the Stephensons and from no other source. Theirs has been the only home the child has ever known. The Stephenson home has been built around the child and they have regarded him as their own. The affection of the Stephensons toward the child and of the child toward them is the same as that of a parent-child

relationship. This entire record shows a happy, harmonious and stable family life in the Stephenson home, where the child has achieved a normal adjustment. Neighbors, other members of the family and even the mother make no criticism of the meticulous care accorded the baby by the Stephensons.

While the mother is not, under the court's findings, disqualified from having the care and custody of her child, the record here fails to show that a change would be for the best interest of the child. The mother was very young during her first marriage and when her three children were born, and, whatever may have been the reason, she did not accept the responsibility imposed upon her by her children. She left them alone at night on some occasions. Her visits to see the baby in the home of of the Stephensons were infrequent. Except for family reunions on special occasions, her visits numbered only two or three times a year. Her explanation for these infrequent visits was that she knew the child was receiving proper care, as indeed he was. The facts show that for more than five years, a large part of which time the mother resided in the same community, the mother was almost a total stranger to her own baby. Mr. Skrobarcek stated he had no attachment for the child, but that he was willing to take the child into his home, where a close attachment would likely develop.

A child specialist who had cared for the child for several years, expressed an opinion that there would be psychological inroads upon the child's mental health and future life if there should be a break of the long and harmonious relationship he had enjoyed for five years in the Stephenson home. Mrs. Skrobarcek's minister, on the other hand, stated that the Skrobarcek home was an orderly one and that the child appeared emotionally stable, though the child had been with the Skrobarceks for only a few weeks. His knowledge of the child was limited, however, to casual observations during the preceding three weeks only.

■ Appellants reason that as a matter of law they are entitled to judgment award-

ing the child to the mother and her husband. In evaluating that which will be for the best welfare of a child, strong presumptions exist in favor of a parent. Garvin v. Hufft, Tex.Civ.App., 243 S.W.2d 391; Carter v. Cade, Tex.Civ.App., 236 S.W.2d 829; Fox v. Fox, Tex.Civ.App., 210 S.W.2d 622. But where the parental tie has been severed over a long period of time, during which the child has formed new associations and relationships that are so strong as to seriously impair and damage the child's welfare by a change, the right of the parent must yield to the welfare of the child.

■ Mrs. Skrobarcek approved of the care her child received in her sister's home for five years. The evidence in this case shows nothing that would improve the child's welfare by reason of a change, and it shows that strong and enduring bonds would be destroyed that would disrupt the domestic relations and stability now enjoyed by the child. The harmonious adjustment achieved by the child should not be disrupted and a change of homes would not, in our opinion, be for his best interest and welfare. Legate v. Legate, 87 Tex. 248, 28 S.W. 281. In such a situation, the welfare of the child will prevail over the wants of the parent. Duckworth v. Thompson, Tex.Com.App., 38 S.W.2d 731; Davis v. Sears, Tex.Com.App., 35 S.W.2d 99; Dunn v. Jackson, Tex.Com.App., 231 S.W. 351; Robinson v. Wampler, Tex.Civ.App., 202 S.W.2d 500; Lynch v. Wyatt, Tex.Civ. App., 191 S.W.2d 499; Johnson v. Campbell, Tex.Civ.App., 107 S.W.2d 1111; Langenegger v. Purl, Tex.Civ.App., 57 S.W.2d 915.

■ Appellants also complain because the trial court during the trial excluded the decree divorcing Mrs. Skrobarcek from her former husband and awarding her the custody of the child. She urges that the decree was an adjudication of her fitness and also was res adjudicata so as to preclude inquiry prior to its date. Appellant suffered no harm by the exclusion of the decree, inasmuch as the trial court in the present suit also found that appellants are fit and proper persons. And the prior decree between Mrs. Skrobarcek and her for-

mer husband is not res adjudicata between Mrs. Skrobarcek and the Stephensons, especially where the decisive issue is not fitness, which exists on both sides of the present suit, but whether a child's normal and stable situation will be seriously disturbed. If the object of the decree was to prove fitness, no harm is present; and if its object was to constitute a foundation for excluding evidence, it would not accomplish that result in a suit between different parties and concerning new issues.

We affirm the judgment awarding permanent custody of the child to Mr. and Mrs. Stephenson.