**The CITY OF WEST LAKE HILLS, Petitioner,**

v.

**The STATE of Texas ex rel. CITY OF AUSTIN, Respondent.**

No. B–2373.

Supreme Court of Texas.

April 28, 1971.

Turman & Mitchell, Austin, Graves, Dougherty, Gee, Hearon, Moody & Garwood, William L. Garwood, Austin, for petitioner.

Don R. Butler, City Atty., Ned Granger, County Atty., Ludlum, Brady & Womack, Stayton, Maloney, Black, Hearne & Babb, John W. Stayton, Austin, for respondent.

REAVLEY, Justice.

This is a quo warranto suit against the City of West Lake Hills which necessitates decisions as to its existence and boundaries. The trial court upheld the city insofar as it lay south of Bee Creek but abrogated its extensions north of that creek. The court of civil appeals held the original incorporation of West Lake Hills to be a "sham" and annulled the city entirely. (Tex.Civ. App., 457 S:W.2d 398) We reinstate the judgment of the trial court.

West Lake Hills was incorporated under the general laws in 1953, and its original field notes are indicated by the hatched area on the accompanying sketch. (This rough sketch is made by this court solely for the purpose of illustrating the issues discussed in this opinion.) In 1954 West

[A3968]

-2-

Lake Hills annexed a 50 vara wide strip as shown to ring the bulk of the land to its north.

Since 1929 the incorporated area of the City of Austin has included Lake Austin as it runs to the east, north, and west of the sketched territory. The trial court found "that the area comprising several thousand acres of land lying west and northwest of Bee Creek adjacent to and bordered on the east, north and northwest by the City of Austin, is an area that but for the artificial buffer zone attempted to be created by the City of West Lake Hills would be within the immediate normal growth pattern of the City of Austin * * * "

West Lake Hills has no bonded indebtedness and collects no ad valorem taxes. Except for a few fees and fines, the finances of the city depend upon voluntary contributions. Nevertheless, municipal services have been provided, chief of which has been police protection in the persons of two fulltime marshals. Since the date of its original incorporation, West Lake Hills (in the words of the trial court) "acting as a city, has performed governmental functions including police protection, building codes, zoning protection, health protection, subdivision control and other basic city functions." There is no water supplied by the city, nor does it have a sewerage system.

This litigation was initiated by thirteen individuals owning land in the encircled and unincorporated area in the attempt to remove West Lake Hills' noose so that they might seek annexation and the city services of Austin. When the City of West Lake Hills moved to dismiss this action for lack of standing of the plaintiffs, the County Attorney of Travis County filed a quo warranto intervention along with its relator, the City of Austin. The quo warranto action, as defined by the pleading of the City of Austin, attacked the "incorporated buffer zone" as invalid and sought a declaratory judgment that the territory surrounded by that "buffer" be declared to be within the extraterritorial jurisdiction of the City of Austin. The City questioned the validity of the incorporation of West Lake Hills but did not specifically seek the demise of West Lake Hills in its prayer for relief.

A petition of the City of Austin to have the trial court apportion overlapping areas of extraterritorial jurisdiction between West Lake Hills and Austin, pursuant to Article 970a § 3, subd. B, Vernon's Anno. Tex.Civil Statutes, was severed into a separate cause to await the determination of the boundaries of West Lake Hills.

■ West Lake Hills contends that there was a jurisdictional bar to the appeal by plaintiffs and intervenors because of their failure to file the record with the court of civil appeals within 20 days after the final judgment as required by Rule 384, Texas Rules of Civil Procedure. The trial court entered two judgments, one on January 9, 1970 and the second on February 5, 1970. West Lake Hills cites Mullins v. Thomas, 136 Tex. 215, 150 S.W.2d 83 (1941) for the proposition that if there is nothing to show that the first judgment was vacated, the second judgment is a nullity and the time of appeal must be measured by the date of the first one. This leaves the question of whether the second judgment shows that it is replacing the first one. It is not necessary that the second judgment expressly state that the first judgment is vacated, though this would be the preferable procedure. In Luck v. Hopkins, 92 Tex. 426, 49 S.W. 360

(1899) the later judgment "reformed" the first judgment, and it was held that the effect was to vacate and set aside the earlier judgment.

■ The trial court placed this heading on its February 5 judgment: "Corrected Final Judgment." We construe this to be an entry of a correct judgment to replace the January 9 decree which had been headed: "Judgment." The corrected judgment provides for the payment of costs of court, whereas the earlier judgment was silent in that respect. Since the trial court retained jurisdiction of its judgment for 30 days, and since the record was filed with the court of civil appeals within proper time after the February 5 decree, we hold that Rule 384 was satisfied. Cf. Davila v. Caller Times Publishing Co., 308 S.W.2d 592 (Tex.Civ.App.1957, no writ).

West Lake Hills objects to the consideration of any relief sought by the individual plaintiffs on the ground that these individuals are not proper parties. The trial court and the court of civil appeals both regarded these landowners as entitled to pursue their action because West Lake Hills' buffer zone deprived them of property without due process of law. The court of civil appeals held that this constitutional bar prevented the Legislature from validating the West Lake Hills' buffer zone. We disagree.

These landowners clearly had no grievance against the original incorporation of West Lake Hills. After the annexation by West Lake Hills to complete the buffer zone and after the passage of 15 years had given some indication that if their land were annexed by the City of Austin its value would be greater, we can understand their wish to escape the noose. However, there is no evidence in this record

that these individual plaintiffs have been deprived of their property, nor do we find any justiciable interest to give them standing in this litigation.

■ It is well established that private parties who are directly affected may collaterally attack a void incorporation or annexation. Walling v. North Central Texas Municipal Water Authority, 162 Tex. 527, 348 S.W.2d 532 (1961); City of Corsicana v. Willmann, 147 Tex. 377, 216 S.W.2d 175 (1949); Parks v. West, 102 Tex. 11, 111 S.W. 726 (1908). However, even if the municipal act is void, the private party must suffer some burden peculiar to himself to acquire standing to sue. Most commonly that special burden is the imposition of tax. Otherwise, no action lies by the individual to restrain an interference with the public interest. City of San Antonio v. Stumburg, 70 Tex. 366, 7 S.W. 754 (1888); Franks v. Welch, 389 S.W.2d 142 (Tex.Civ.App.1965, writ ref'd n. r. e.); Cf. Scott v. Board of Adjustment, 405 S.W.2d 55 (Tex.Sup.1966).

■ The City of West Lake Hills has imposed no burden upon these property owners by taxation or otherwise. The evidence shows that the market value of their land is increasing. Their position is no better than that of the plaintiffs in San Antonio Conservation Society v. San Antonio, 250 S.W.2d 259 (Tex.Civ.App. 1952, writ ref'd), who alleged that their property would depreciate in value as a result of the building of a proposed bridge over the San Antonio River; nor is the grievance any greater than the complaint in Harrell v. Lynch, 65 Tex. 146 (1885) where the moving of the county seat lessened the value of the plaintiffs' property.

The plaintiffs have not shown such injury as would entitle them to attack the incor-

poration or annexations by West Lake Hills. They are improper parties here. We regard the action purely in the nature of quo warranto within the scope of the relief sought by the State on the relation of the City of Austin.

We come to the problem with the West Lake Hills incorporation. The incorporators intended to include a ribbon of land between West Lake Drive on the west and the city limits of Austin on the east running from Bee Creek on the south to the north line of land owned by Dan Grieder. They knew that Austin had annexed Lake Austin but they did not know either the exact contour elevation or where the Austin limit line lay on the ground. They assumed that this line was at the same elevation as the dam (492 feet).

The field notes used in incorporation called for the West Lake Hills line to run along the east side of West Lake Drive to the north line of Dan Grieder's land, then follow said north line easterly to the city limit line of the City of Austin, and "thence southerly with the city limit line of the City of Austin to the place of beginning." In fact the city limit line of Austin was at the contour elevation of 504.9 feet (above mean sea level). It was demonstrated at the trial that this 504.9 feet contour line runs to the west of West Lake Drive at Bee Creek and at three other points north of Bee Creek. The east line of the area sought to be incorporated runs to the west of the west line of the area at these four points. Therefore, there were breaks at Bee Creek and to the north in the contiguity of the territory described. We agree with the lower courts that West Lake Hills cannot be upheld in its original form. See State ex rel. Wilke v. Stein, 26 S.W.2d 182 (Tex. Com.App.1930).

■ The question then becomes whether part of the territory originally described

is to be invalidated or whether the entire incorporation is to fail. As is indicated in City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571 (Tex.Sup. 1964), the drawing of the lines of a municipality is a legislative function. The court is not asked to draw a line here; the Austin city limit line breaks the adjacency of the territory and West Lake Hills cannot exist as it was planned and described. It must either suffer the loss of the area along Lake Austin, or suffer the loss of the bulk of its area to the south of Bee Creek, or the very existence of the village must be vitiated. The City of West Lake Hills contends that the third alternative is not to be considered because this relief was not expressly sought by the quo warranto pleadings. The position is correct with respect to those pleadings; but if we are to permit the relief which was sought and to strike part of West Lake Hills, the court must necessarily decide just what it annuls and whether that be part or all of the village.

The territory to the north of Bee Creek is no more than a fringe of land lying between the road nearest to the lake and a contour line which cannot be located without a surveying party. The trial court found that the area south of Bee Creek is unrelated to the territory north of the creek. Law enforcement in the area north of Bee Creek has been a problem for many years. Austin will not provide fire or police services beyond the waters of the lake. West Lake Hills officers know that their jurisdiction ends before the land reaches the water, but they do not know where it ends.

■ The fringe north of Bee Creek is not so essential to the city as to prevent the lifesaving separation. Because of the comparative insignificance of the fringe and because of the sixteen years of continuous operation of the municipality, the City of West Lake Hills is upheld in the large contiguous area south of Bee Creek.

In 1954 West Lake Hills passed Ordinance No. 6 which annexed a fifty vara strip of land indicated on the sketch. Authority for this action depended upon compliance with Art. 974g, but this statute limited the annexing city to territory "contiguous and adjacent" to the city and no more than one-half mile in width. The fifty vara strip is almost six miles long, and it lies far beyond one-half mile in distance from the previous boundaries of West Lake Hills. For the most part, the strip is closer to the city limits of Austin than to the body of West Lake Hills. The mayor of West Lake Hills, testifying at the trial, stated candidly that this annexation "was solely for the purpose of preventing its being annexed and served by the City of Austin."

We hold Ordinance No. 6 to be invalid for the reason that the land was not adjacent to West Lake Hills at the time of the ordinance's passage, nor has this strip been adjacent thereto at any time. City of Pasadena v. State ex rel. City of Houston, 442 S.W.2d 325 (Tex.Sup.1969); City of Irving v. Dallas County Flood Control District, 383 S.W.2d 571 (Tex.Sup.1964). The annexations of three other tracts to the north of Bee Creek also fail because, with the invalidity of both Ordinance No. 6 and the incorporation of the fringe along the lake, the tracts are not contiguous or adjacent to West Lake Hills.

The final question is whether the non-contiguous and non-adjacent area of West Lake Hills has been validated by acts of the Legislature. The Legislature has for years regularly enacted statutes validating in very broad language the proceedings and boundaries of municipalities. In 1957 it provided that towns of less than 5,000 population "shall not be held invalid by reason * * * of a failure to properly define the limits of said * * * town" and that "the areas and boundary lines of all such cities and towns affected by this Act are in all things validated." Article

966e, V.A.C.S. The Legislature has often provided as follows: "The boundary lines of all such cities and towns, including both the boundary lines covered by the original incorporation proceedings and by any subsequent extension thereof, are hereby in all things validated." E. g., Article 966f (1959), Article 966h (1961), Article 974d–5 (1955), Article 974d–6 (1957), Article 974d–11 (1965). West Lake Hills contends that these statutes validated the area of West Lake Hills as originally incorporated and as annexed, notwithstanding any defects otherwise existing in the boundaries which the city attempted to achieve.

We have no constitutional problem at this point and do not question the power of the Legislature to permit the incorporation of a non-contiguous area and the annexation of non-adjacent territory. On numerous occasions legislative enactments have validated a municipal act which was originally ineffectual. Hunt v. Atkinson, 17 S.W.2d 780; 12 S.W.2d 142; 18 S.W.2d 594 (Tex.Com.App.1929); Pyote Independent School District v. Dyer, 24 S.W.2d 37 (Tex.Com.App.1930); 34 S.W.2d 578 (Tex.Com.App.1931); Perkins v. State, 367 S.W.2d 140 (Tex.Sup.1963). The question is one of construction of the validating statutes and not one as to the power of the Legislature.

We find no statute which has expressly permitted the creation or extension of a municipal area with intervening territory interrupting the contiguity and adjacency of the corporate area. The Legislature has repeatedly required the extension of any town or city to be limited to "contiguous and adjacent area," or "territory joining the limits of any city" or "additional territory lying adjacent to said city" or "the adjacent territory desired to be annexed" or "the territory contiguous to said city and proposed to be annexed." E. g., Articles 974g, 974, 974e, 974e–1 through 974e–7, 974–1, 1135, 1175(2), 1182a(1), 1182b, 1188, V.A.C.S. In view of the repeated require-

ment of adjacency in the statutes, we do not believe that the validating statutes should be construed to a different effect in the absence of specific and express provision.

We therefore *uphold the City of West Lake Hills* as originally incorporated south of the 504.9 feet contour line on the south side of Bee Creek. The attempt to include area north of Bee Creek is annulled. The ordinances attempting to annex area to the north of Bee Creek, beginning with Ordinance No. 6, are held to be invalid.

The judgment of the court of civil appeals is reversed; the judgment of the trial court is affirmed.