**CITY OF NORTHLAKE, Appellant,**

v.

**EAST JUSTIN JOINT VENTURE and Sentry Environmental, L.P., Appellees.**

No. 2-92-194-CV.

Court of Appeals of Texas, Fort Worth.

March 30, 1994.

Rehearing Overruled May 3, 1994.

ee to serve as executive secretary of the board." Tex.Rev.Civ.Stat.Ann. art. 4512g, § 8(a) (West Supp.1994).

William L. Smith, Jr., Denton, for appellant.

Kathleen M. LaValle, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for appellees.

Before LATTIMORE and DAY, JJ., and CLYDE R. ASHWORTH (Retired), J.

OPINION

LATTIMORE, Justice.

Appellant/defendant City of Northlake ("Northlake") appeals from an adverse judgment in favor of appellees/plaintiffs East Justin Joint Venture ("Justin") and Sentry Environmental, L.P. ("Sentry"), declaring two ordinances enacted by Northlake void. One ordinance was intended to convert Northlake from a type B general-law municipality to a type A general-law municipality. The second ordinance was to annex into Northlake land owned by Justin, upon which Sentry intends to construct a solid waste landfill. In two points of error, Northlake complains that the trial court erred in granting summary judgment in favor of East Justin/Sentry, and in failing to grant summary judgment in favor of Northlake. In four reply points, Justin/Sentry assert that the summary judgment in its favor should be affirmed because: (1) annexation of Justin's property required their consent, which was never given; (2) annexation increased Northlake's surface area to greater than two square miles, in violation of state law; (3) Northlake did not comply with state law requirements to become a type A city; and (4) a quo warranto proceeding is not required because the ordinances are claimed to be void.

We affirm.

This lawsuit involves approximately 364 acres owned by Justin (hereinafter the "Property") located in the southwestern portion of Denton County near the small general-law town of Northlake. Northlake was incorporated in 1960 as a type B general-law town with about 200 residents. In 1990, the population was 247. Northlake provides no city services, except for a police force shared with the City of Marshall Creek. The northern boundary of the Property lies along the south edge of F.M. 407, which runs generally east to west. The incorporated limits of Northlake lie immediately to the north of F.M. 407 and the Property. After receiving notice of a proposed sanitary landfill use on the Property, Northlake passed a resolution opposing the landfill use. On August 9, 1990, three of the five Northlake aldermen voted to convert Northlake from a type B to a type A general-law municipality (the "Conversion

Ordinance") at a regular meeting of the governing body. The other two aldermen were absent from this meeting. Minutes of this meeting were recorded and certified. On October 11, 1990, a written ordinance, numbered 901011, was entered into the official records of the town. It was signed by three aldermen, two of whom were not at the August 9 meeting. In addition, one of the aldermen who was present at the August 9 meeting and did sign the ordinance on October 11 signed as Mayor Pro Tempore, and not as an alderman. The mayor serving at the time of the August 9 meeting had subsequently left the city's service, and did not sign the ordinance. While there was an October 11, 1990 regular meeting of the governing body, no vote was taken as to the Conversion Ordinance. Northlake concedes that the ordinance was signed prior to the October 11 meeting. The Conversion Ordinance was not filed or recorded with the County Clerk of Denton County.

Northlake thereafter started the process of passing several ordinances to annex thousands of acres into the corporate limits. Northlake's Mayor and Secretary solicited signatures on an annexation petition from inhabitants on a tract of land located north of F.M. 407 and about 600 feet east of the Property. The Justin/Sentry Property is unoccupied, and thus none of the signatures on the petition was from the Property. Under the Northlake annexation ordinance at issue in this case, the Justin/Sentry Property and the east tract from which petition signatures were solicited were joined by a 600 foot long strip of land the width of the F.M. 407 right-of-way. The engineer's property description (field notes) attached to the petition thus described one unified tract joined by the F.M. 407 strip. On January 31, 1991, the Northlake City Council enacted Ordinance No. 910131 (the "Annexation Ordinance") which annexed the Justin/Sentry property without the consent of Justin/Sentry or the State of Texas. Following the annexation of the Property, the total area of the Northlake corporate limits exceeded two square miles.

Justin/Sentry filed suit to have declared void the Conversion and Annexation Ordinances which Northlake had enacted.

Northlake counterclaimed seeking a declaratory judgment establishing the validity of the ordinances. The trial court granted a partial summary judgment in favor of Justin/Sentry declaring the Annexation Ordinance void. Thereafter, Northlake and Justin/Sentry both filed motions for summary judgment to determine the validity of the Conversion Ordinance. The trial court entered summary judgment in favor of Justin/Sentry declaring that the Conversion Ordinance also was void, and denying Northlake's motion for partial summary judgment. All remaining claims asserted by Justin/Sentry have been dismissed by stipulation.

■ Northlake complains in two points of error that the trial court erred: (1) in granting summary judgment in favor of Justin/Sentry; and (2) in failing to grant summary judgment in favor of Northlake. In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a material fact are resolved against him. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Here, none of the parties suggest that there is any issue of material fact in dispute. Rather, the parties argue that a summary judgment for their position is proper as a matter of law, given the undisputed facts.

Resolution of Northlake's points of error requires that we first address issues raised in Justin/Sentry's reply points. In reply points three and four, Justin/Sentry argues that Northlake did not comply with state law requirements to become a type A city, and that they had standing to challenge the ordinance. Northlake responds that Justin/Sentry lacks standing to collaterally attack the validity of the Conversion Ordinance, and that Northlake's status as a type A general-law municipality may only be called into question by the State of Texas in a quo warranto proceeding.

The basis for requiring quo warranto proceedings is that a judgment in favor of or against a municipal corporation affecting the public interest binds all citizens and taxpayers even though they were not parties to the suit. *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 437 (Tex.1991), (quoting *Superior Oil Co. v. City of Port Arthur,* 726 F.2d 203, 206 (5th Cir.1984)). The State acts to protect itself and the good of the public generally, through the duly chosen agents of the State, who have full control of the proceeding. *Fuller Springs v. State ex rel. City of Lufkin,* 513 S.W.2d 17, 19 (Tex. 1974). However, where an ordinance is claimed to be void, and not merely voidable, a collateral attack, rather than quo warranto proceeding, is proper. *City of Willow Park v. Bryant,* 763 S.W.2d 506, 508 (Tex.App.—Forth Worth 1988, no writ) (holding annexation ordinance void); *City of West Lake Hills v. State ex rel. City of Austin,* 466 S.W.2d 722, 727 (Tex.1971) (private parties who are directly affected may collaterally attack a void incorporation or annexation). Where the ordinance is challenged due to procedural irregularities, and the municipality does not exceed the authority delegated to it by the legislature in its enactment, the ordinance is only voidable, and the State's participation in a quo warranto proceeding is required. Even if the municipal act is void, the private party must suffer some burden peculiar to himself to acquire standing to sue. *Alexander Oil Co.,* 825 S.W.2d at 438–39 (holding annexation ordinance only voidable due to procedural irregularities).

Here, Justin/Sentry asserted that the ordinance was void, due to substantial irregularities in the enactment of the ordinance. Specifically, Justin/Sentry asserts that: (1) only three out of five aldermen voted for the ordinance, and the record vote required by the statute is a two-thirds majority of the entire five member governing body eligible to vote; (2) a record vote was not taken on the ordinance; (3) a copy of the record proceedings was not signed by the mayor; and (4) a record of the proceedings was not filed and recorded in the office of the County Clerk of Denton County. It is true that all of the asserted defects are procedural in nature. However, we think the failure to have the necessary votes to enact the ordinance rises to the level where the ordinance is void, and not just voidable. The council's action without the requisite votes does not reach the threshold of colorable authority. To hold otherwise would be to allow any action by some part of a governing body to carry weight where no authority is given by law. As discussed below, the failure to gain a two-thirds majority vote under the predecessor statute was found fatal in *State v. Etheridge,* 32 S.W.2d 828, 831 (Tex.Comm'n App.1930, judgm't adopted). Furthermore, the Conversion Ordinance caused peculiar harm to Justin/Sentry, since it arguably is necessary to the annexation of Justin/Sentry's property. We hold that Justin/Sentry does have standing to bring a private action challenging the validity of the Conversion Ordinance.

The procedures for changing from a type B to a type A general-law municipality are expressly set forth in Tex.Loc.Gov't Code Ann. § 6.012 (Vernon 1988), which requires that:

(1) at least two-thirds of the governing body of the municipality at a regular meeting must vote to make the change and the vote must be recorded in the journal of the governing body's proceedings;

(2) a copy of the record of the proceedings must be signed by the mayor;

(3) a copy of the record of the proceedings must be attested by the municipality's clerk or secretary under the corporate seal; and

(4) a copy of the record of the proceedings must be filed and recorded in the office of the county clerk of the county in which the municipality is located.

The governing body of a type B general-law municipality consists of five aldermen. Tex. Loc.Gov't Code Ann. § 23.021 (Vernon 1988). To meet the two-thirds requirement, four of the five aldermen must vote to make the change at a regular meeting. *Etheridge,* 32 S.W.2d at 830 (construing Tex.Rev.Civ.Stat. Ann. art. 961, the predecessor statute to Tex.Loc.Gov't Code Ann. § 6.012, and holding that "two-thirds of the council" means two-thirds of the entire five member council);

*City of Alamo Heights v. Gerety,* 264 S.W.2d 778, 780 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.). The statutory requirements for obtaining type A status are to be strictly construed. *Etheridge,* 32 S.W.2d at 831; *City of Centerville v. Adkisson,* 291 S.W.2d 798, 800 (Tex.Civ.App.—Waco 1956, no writ). However, where there has been colorable compliance with the statute, and the ordinance has been in place for a sufficient period of time, the municipality may become a *de facto* type A municipality. *See Cook v. Town of Putnam,* 283 S.W. 649, 650 (Tex.Civ.App.—Eastland 1926, writ dism'd w.o.j.) (holding that *de facto* type A status was achieved where the only violation of the statute was the failure to file the ordinance with the county clerk); *Couch v. City of Fort Worth,* 287 S.W.2d 255, 258 (Tex.Civ.App.—Fort Worth 1956, no writ); *City of West Lake Hills,* 466 S.W.2d at 728 (Tex.1971) (holding that 16 years justifies *de facto* status).

■■■■ Here, there were only three aldermen present at the general meeting when the vote was taken. In addition, the record of the proceedings was not filed and recorded at the office of the county clerk. The mayor who was in office at the time the vote was taken did not sign the ordinance. Rather, the mayor pro tempore, who was one of the council members who did vote, signed the ordinance. Thus, Northlake did not comply with the requirements set forth in the Local Government Code. The first of these defects, the failure to have a full two-thirds of the council affirmatively voting for the ordinance in a regularly scheduled meeting, has been found a fatal defect voiding the enactment. *Etheridge,* 32 S.W.2d at 830. Moreover, these variances from proper procedure cannot be considered colorable compliance justifying *de facto* type A status, since they go beyond a mere failure to file the ordinance with the county clerk, as in *Cook.* Northlake had not acted in reliance on its assumed status for an extended period of time. Neither the *Etheridge* or *Gerety* courts found *de facto* status on facts very similar to those of this case. We hold that Northlake Ordinance No. 901011 is void, and that Northlake does not have *de facto* type A status. Appellee's reply points three and four are sus-

tained, and the declaratory judgment of the trial court declaring Northlake Ordinance No. 901011 void is affirmed.

■■■■ Justin/Sentry next asserts in reply point two that the annexation of their property increased Northlake's surface area to greater than two square miles, in violation of state law, and that the Annexation Ordinance thus is void. The Local Government Code sets area limits for municipalities at the time of incorporation, as follows:

A community may not incorporate as a general-law municipality unless it meets the following territorial requirements:

(1) a community with fewer than 2,000 inhabitants must have not more than two square miles of surface area....

TEX.LOC.GOV'T CODE ANN. § 5.901 (Vernon 1988) (formerly TEX.REV.CIV.STAT.ANN. art. 971 (Vernon 1963)). It is undisputed that Northlake has less than 2,000 inhabitants. The annexation challenged by Justin/Sentry increased Northlake's surface area to approximately nine square miles. Thus, if the area limitations at the time of incorporation also apply to subsequent annexations, Northlake's Annexation Ordinance will be void. There are separate statutory provisions for annexation by type A and type B municipalities. The statute governing type B municipalities, TEX.LOC.GOV'T CODE ANN. § 43.025 (Vernon 1988), specifically refers to the limitations of section 5.901. Conversely, the statute which governs annexation by type A municipalities, TEX.LOC.GOV'T CODE ANN. § 43.024 (Vernon 1988) does not refer to the limitations of section 5.901. As discussed above, Northlake acted to convert itself to a type A municipality prior to the annexation of Justin/Sentry's property. Since we hold that Northlake's conversion to a type A municipality is void, we must also hold that Northlake Ordinance No. 910131 is void, because it violates the two square mile surface area limitation of TEX.LOC.GOV'T CODE ANN. § 43.025.

Even if we assumed that the Conversion Ordinance was valid at the time the Annexation Ordinance was enacted, we would still hold that the Annexation Ordinance exceeded statutory authority and was therefore void.

Northlake argues that the legislature's failure to include the area limitation for type A municipality annexation, when it did limit type B municipalities, is evidence of legislative intent not to impose such a restriction. Justin/Sentry argues that the area limitation also applies to type A municipalities, and that the legislative history of sections 43.024 and 43.025 and their predecessor statutes explains the disparate language of the statutes. In support of that contention, Justin/Sentry rely on *City of Deer Park v. State ex rel. Shell Oil Co.*, 259 S.W.2d 284 (Tex.Civ. App.—Waco 1953), *aff'd* 275 S.W.2d 77 (Tex. 1954), the only case addressing the two square mile limitation in section 5.901.

■ The facts in *Deer Park* are virtually identical to those in the present case. The Deer Park City Council voted to become a type A municipality. *Id.* at 287. Serious questions existed as to whether the city council properly voted to become a type A municipality. The court held that even if Deer Park had validly voted to become a type A municipality, the annexation would still be void because it violated the two square mile limitation of article 971. *Id.* To reach that conclusion, the court examined the legislative intent in articles 971 and 974 (now TEX.LOC. GOV'T CODE ANN. §§ 5.901 & 43.024, respectively):

> [W]e think the provisions contained in Art. 971 were intended by the Legislature to impose a limitation upon the power of any city or town to increase its superficial area by annexation of additional territory to more than two square miles when such town or city has less than 2,000 inhabitants.... If such was not the intended purpose and effect of such legislation and if any city or town, after its original incorporation, can continue by successive annexations to increase its superficial area indefinitely without regard to the number of its inhabitants, then the enactment of Art. 971 was vain, futile and meaningless.

*Deer Park*, 259 S.W.2d at 287. The inclusion of an express two mile restriction on annexations by type B municipalities under section 43.025 and the absence of a comparable restriction under section 43.024 (annexations by type A municipalities) can be understood through a review of the progression of legislative enactments. The predecessor to section 43.024 was article 974; the predecessor to section 43.025 was article 1135. Article 974 (without the two square mile limitation) was enacted twenty years before the passage of article 971, which created the two square mile limitation on the size of a municipality at incorporation. Article 1135 (with the two square mile limitation) was enacted eight years after article 971. Thus, the express reference to size limitations in article 1135, and the absence of any reference in article 974, does not imply a legislative intent not to impose the two mile limitation on type A municipalities. The codification of these articles into the Local Government Code was not intended to enact any change to the previously existing statutes. We thus hold that Northlake Ordinance No. 910131 is void, even if Northlake had validly converted to a type A municipality prior to enacting the Annexation Ordinance. Reply point two is sustained.

■ In the alternative, Justin/Sentry argues in reply point one that annexation of their property, and the State's property within the F.M. 407 right-of-way, required the property owner's consent, and that without that consent, the annexation is void. A general law municipality with a population of 1,000 or less cannot unilaterally annex land; it must either obtain the consent of the property owner, if the land is occupied by less than three qualified voters, or the consent of a majority of qualified voters inhabiting an occupied annexed area. TEX.LOC.GOV'T CODE ANN. §§ 43.024, 43.025, 43.028 (Vernon 1988) (formally TEX.REV.CIV.STAT.ANN. art. 974 & 974g); TEX.LOC.GOV'T CODE ANN. § 43.033 (Vernon Supp.1994) (permitting general law municipalities having population of over 1,000 to unilaterally annex land provided certain conditions are met); *Sitton v. City of Lindale*, 455 S.W.2d 939, 940 n. 2, 941 (Tex.1970) (holding annexation ordinance void where municipality attempted to annex unoccupied territory without owner consent); *City of Kyle v. Price*, 547 S.W.2d 376, 377–78 (Tex. Civ.App.—Austin 1977, no writ). As previously stated, the Justin/Sentry Property and F.M. 407 right-of-way are unoccupied, and

neither Justin/Sentry nor the State gave consent to Northlake. The annexed land east of Northlake was occupied, and consent from a majority of the qualified voters within that tract was obtained. At the heart of Justin/Sentry's argument is the proposition that the Justin/Sentry Property, the F.M. 407 right-of-way, and the annexed property east of Northlake's original corporate limits are actually three separate tracts of land different in character, and thus not capable of unified annexation as a single tract. If these are held to be geographically separate tracts, and not one unified tract, the statutory provisions governing the annexation of unoccupied land must be followed, rather than the petition process that was used by Northlake. Two of our sister courts have addressed this issue. In *Deer Park*, the municipality used the petition of three inhabitants on property to the south of a major road in an attempt to annex an unoccupied tract to the north of the road. The trial court found that the two tracts were detached and not part of the same territory, and the Waco Court of Appeals affirmed. *Deer Park*, 259 S.W.2d at 287. In *City of W. Univ. Place v. State ex rel. Kirby*, 56 S.W.2d 1081 (Tex.Civ.App.—Galveston 1932, writ ref'd), the court voided an attempted annexation which contained more vacant land than inhabited land. Here, the vacant and inhabited tracts are not just separated by a road, as in *Deer Park*, or intermingled, as in *Kirby*. Northlake, in order to create one unified tract, has annexed a 600 foot long connecting right-of-way to join what otherwise would be two completely separate tracts with no common boundary. We hold that the Justin/Sentry Property, and the property east of Northlake where occupant consent was obtained, are geographically separate tracts, and Northlake must obtain owner consent before annexing the Justin/Sentry Property.

The judgment of the trial court voiding Northlake Ordinances No. 901011 and 910131 is affirmed.