Paul David **WOOSLEY**, Appellant,

v.

David **SMITH**, Kimberly Smith, The Adoption Alliance and Dale R. Johnson, Appellees.

No. 04–95–00746–CV.

Court of Appeals of Texas, San Antonio.

April 10, 1996.

---

4. *Nixon,* 690 S.W.2d at 548–549.

Robert McGlohon, Jr., San Antonio, for Appellant.

Sam C. Bashara, Law Offices of Sam C. Bashara, P.C., San Antonio, Richard R. Carlson, Attorney and Professor of Law, Houston, for Appellees.

Before CHAPA, C.J., and STONE and GREEN, JJ.

CHAPA, Chief Justice.

This is an appeal from a summary judgment granted in favor of appellees in a proceeding by which appellant attacked a decree terminating his parental rights. In two points of error, appellant complains that the trial court erred in denying his motion for summary judgment and in granting appellees' motion for summary judgment. Appellant bases his complaint on his contention that the decree terminating his parental rights is void as a matter of law. We affirm the decision of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 1992, a baby now known as "Kyle" was born to Kymberly Fusco. At the time of Kyle's conception and birth, Kymberly was married to Nicholas Fusco. However, Nicholas is not Kyle's biological father. It is undisputed that appellant, Paul David Woosley, is Kyle's biological father.

Shortly after Kyle's birth, Kymberly properly executed an Affidavit of Relinquishment of Parental Rights and appellant executed an Affidavit of Waiver of Interest in Child. On July 15, 1992, upon the petition of appellee, The Adoption Alliance, the trial court entered a decree terminating the parent-child relationship between Kyle and his biological parents. Two days later, Nicholas, Kyle's presumed father, also executed an Affidavit of Relinquishment of Parental Rights. Then, on July 22, 1992, the trial court entered a decree terminating the parent-child relationship between Kyle and Nicholas. Finally, on March 1, 1993, under separate cause number, the trial court entered a decree of adoption, making appellees, David and Kimberly Smith, Kyle's adoptive parents.

The proceedings giving rise to this appeal began in July of 1993. At that time, appellant filed his Suit to Set Aside Void Judgment or, in the alternative, Original Petition for Bill of Review. Appellant sought to, among other things, set aside both the Termination of Parental Rights Decree and the Adoption Order. Both parties moved for partial summary judgment. In a general order, the trial court denied appellant's motion, granted appellees' motion, and severed the remaining tort causes of action into a separate lawsuit not at issue in this appeal.

## ARGUMENTS ON APPEAL

■ Appellant contends that the trial court erred in granting appellees' motion for partial summary judgment because the decree terminating his parent-child relationship with Kyle is void as a matter of law. Appellant relies on Tex.R.Civ.P. 301, which provides that only one final judgment shall be rendered in any cause. Appellant contends that there are two purported final judgments in the underlying termination action. Appellant argues that because there are two "final" judgments in the termination action, the first judgment which terminated his parental rights is void and may not support the subsequent adoption order.

The first decree of termination operated to terminate the parental rights of appellant and the biological mother. That decree indicated that there was no presumed father.

The subsequent decree of termination recognized the existence of the presumed father and operated to terminate the presumed father's parental rights. The second decree references the first decree by stating that "the court further finds that termination of the parent-child relationship between ... [the biological mother and the child and appellant and the child] occurred on July 15, 1992." Appellant maintains that because the second decree did not specifically incorporate the first decree, the first decree is a nullity and the second decree should control.

Appellees, on the other hand, contend that the first decree was interlocutory as it did not dispose of all parties necessary to the case, namely the presumed father. As such, appellees argue that the two decrees merged and became final when the second decree, which disposed of the presumed father, was rendered. While the result urged by appellee coincides with our ultimate conclusion, it is not so facilely reached.

■ We find that the first decree was not interlocutory but final at the time it was entered. In order to be final, a judgment must dispose of all parties and issues in a lawsuit. *Houston Health Clubs, Inc. v. First Court of Appeals,* 722 S.W.2d 692, 693 (Tex. 1986). Conversely, an order is interlocutory when it fails to dispose of all parties to a suit and leaves the case in such a situation that further action by the court is required to settle the controversy. *Speer v. Stover,* 711 S.W.2d 730, 734 (Tex.App.—San Antonio 1986, no writ). At the time the first decree was entered in this case, the only parties to the lawsuit were the petitioners and the biological parents; the presumed father was not a party to the suit. As such, the first decree did in fact dispose of all parties and issues raised by the pleadings. The first decree was, therefore, a final judgment. That the presumed father was mentioned in the first judgment is nothing more than gratuitous, as this fact had no bearing on the termination of the parental rights of the biological parents who were the named parties in the suit.

■ While it is true that there can be only one final appealable judgment in any lawsuit, Tex.R.Civ.P. 301, as long as the trial court

has plenary power over a judgment, it is not technically final. *Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993). The trial court has the power to correct, modify, vacate, or reform a judgment during the thirty days that it retains plenary jurisdiction over a case. TEX.R.CIV.P. 329b; *Faulkner v. Culver,* 851 S.W.2d 187, 188 (Tex.1993). It was while the trial court retained such plenary jurisdiction over this case, that the presumed father was made a party to the suit.

The purpose of the termination proceeding was clearly to ensure that Kyle was legally available for adoption. The record indicates that all parties consented to the proceeding with complete understanding of its purpose. In order to give effect to the intentions of the parties involved and to the termination proceeding itself, it was necessary for the presumed father's parental rights to be terminated. *See* TEX.FAM.CODE ANN. § 12.02 and § 16.03 (Vernon 1986).[1] Therefore, upon the motion of the petitioners, the trial court effectively joined the presumed father into the suit as a necessary party in order to terminate his parental rights.

Thus, during the time the trial court maintained the power to modify, correct, or reform its judgment, it became clear that (1) the first decree was incorrect as it stated that there was no presumed father and (2) the rights of all necessary parties had not been disposed. This latter fact rendered the first judgment interlocutory. It is in this respect that we agree that the decree terminating the rights of the biological parents was interlocutory in nature. It became interlocutory when a necessary party was joined in the suit while the judgment, which failed to dispose of that party, was not final for purposes of appeal.

Where an interlocutory order is entered disposing of the interests of less than all parties and claims, that order does not become final until a subsequent order is entered disposing of the remaining parties and claims. *Mafrige v. Ross,* 866 S.W.2d 590, 591 n. 5 (Tex.1993); *H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex.1963). Once

an order has been entered disposing of all remaining parties and issues, all the orders merge, creating a final and appealable judgment. *Id.*

As such, when the second decree was entered in the present case, it did not render the previous decree void as appellant contends. Rather, it operated to make an interlocutory judgment final. In other words, the decree that terminated the rights of the biological parents was brought forward and, by implication, merged with the decree terminating the rights of the presumed father, the last interested party in the proceeding. *Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex. 1972). At that point, the entire termination proceeding became final. The resulting final judgment gave effect to all of its components, including the termination of appellant's parental rights.

Even if we were to follow appellant's reasoning and hold that there were two purportedly final judgments in this case and they did not merge, we would still conclude that the decree terminating appellant's parental rights was valid. Appellant points to two seemingly conflicting lines of cases dealing with multiple judgments. In *Mullins v. Thomas,* 136 Tex. 215, 150 S.W.2d 83 (1941), the supreme court noted that a second judgment in the same case is not a vacation of the first and, if there is nothing to show that the trial court vacated the first judgment, the second judgment is a nullity. *Id.* at 84. Conversely, *City of West Lake Hills v. State,* 466 S.W.2d 722 (Tex.1971), the supreme court held that the second judgment replaces the first judgment, and therefore, the second judgment controls. *Id.* at 726–27. The court's holding in *City of West Lake Hills* turned on the fact that the record indicated the trial court's intent to replace the first judgment with the second. *Id.* In *Azbill v. Dallas Co. Child Protective Serv.,* 860 S.W.2d 133 (Tex.App.—Dallas 1993, no writ), the court correctly harmonizes the supreme court's holdings, stating that while a second judgment does not automatically vacate the

1. The relevant sections of the Family Code now in effect are TEX.FAM.CODE ANN. § 151.002 and § 162.001 (Vernon Supp.1996).

first, if the record shows that the trial court intended to vacate the first judgment, the second judgment will control. *Id.* at 139.

In the present case, appellant argues that the *Mullins* line of cases is incorrect and that we should follow the *City of West Lake Hills* holding, which would operate to make the decree terminating his parental rights a nullity. However, while appellant urges us to adopt the *City of West Lake Hills* holding, he fails to address the language in that case regarding the intention of the trial court. The court in *City of West Lake Hills* determined that the second of two judgments was the final judgment because it affirmatively showed that it was intended to replace the first judgment by its title: "Corrected Final Judgment." *City of West Lake Hills,* 466 S.W.2d at 727. The reasoning is similar in other cases dealing with the subject of multiple judgments. *See Check v. Mitchell,* 758 S.W.2d 755, 756 (Tex.1988) (subsequent judgment significantly changed aspects of case warranting court's belief that it was intended to replace first judgment); *B & M Mach. Co. v. Avionic Enter., Inc.,* 566 S.W.2d 901, 902 (Tex.1978) (second judgment entitled "Amended Judgment" held to replace first judgment).

In the present case, there is absolutely no indication that the second decree was intended to replace the first. In the second termination decree, the trial court specifically acknowledged that the rights of the biological parents had been terminated by previous decree. This reference indicates the court's intention that the first decree remain in effect. There is no suggestion that the trial court had any intent to vacate the first decree or substitute the first decree with the second. Therefore, even if we were to hold that the two judgments did not merge and follow the reasoning in *City of West Lake Hills,* as appellant suggests, we would be compelled to hold that the first judgment, purporting to be final, controls and the second judgment is void.

While our conclusion is based upon the clear dictates of the law, we are compelled to also note the strong public policy concerns expressed by the supreme court in *Brown v. McLennan County Children's Protective Serv.,* 627 S.W.2d 390 (Tex.1982). In *Brown,* the Court recognized that:

> ... [W]hen a parent voluntarily terminates this parent-child bond, the best interests of the child become paramount. Once that child has been surrendered ... for adoption, the safety, education, care and protection of the child, not the contentment or welfare of the parent, is of utmost importance.... Children voluntarily given up in compliance with the Family Code ... cannot be snapped back at the whim of the parent.

*Id.* at 393–94. In the present case, the record clearly indicates that, recognizing the child's best interest, appellant voluntarily relinquished his rights to Kyle and had every intention of doing so even prior to the baby's birth. The record further indicates that the termination proceeding was in strict compliance with the Family Code. Under these circumstances, we find it inconceivable that appellant would now attempt, when the child is three years old, to take him from the only family he has known. *See Skrobarcek v. Stephenson,* 249 S.W.2d 83, 85 (Tex.Civ. App.—San Antonio 1952, no writ) (holding where parental tie has been severed over long period of time, during which child has formed new associations, right of parent must yield to welfare of child).

Given the facts of this case and the controlling law, the mandate requiring us to look to the best interest of the child is easily harmonized with the public policy favoring the finality and integrity of judgments. *See In re Hughes,* 770 S.W.2d 635, 637 (Tex. App.—Houston [1st Dist.] 1989, no writ) (finding best interest of child and integrity of judgment both served in denying parent who voluntarily terminated her relationship with child right to later adopt child). We conclude that the decree terminating appellant's parental rights is valid as a matter of law. Appellant's first and second points of error are overruled.