In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00219-CR


______________________________




EARL EUGENE BRYANT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 20307




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Earl Eugene Bryant appeals from the final adjudication of his guilt for the offense of assault
causing bodily injury. He was sentenced to ten years' imprisonment.

 Bryant contends that the trial court had no jurisdiction to revoke his community supervision
because a required capias was not issued. (1) See Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b)
(Vernon 2006). This claim runs headlong into legislatively imposed limits on an appeal from a
determination to adjudicate. Article 42.12, Section 5(b) of the Texas Code of Criminal Procedure
contains no jurisdictional exception. The sentence in question simply says, "No appeal may be taken
from this determination." Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon 2006). The
Texas Court of Criminal Appeals has recently explicitly held that "a jurisdictional attack on the trial
court's determination is still an attack on that determination, and it may not be advanced on appeal." 
Davis v. State, 195 S.W.3d 708, 712 (Tex. Crim. App. 2006).

 We may not address the issue. We overrule this contention of error.

 Bryant next contends that the judgment adjudicating his guilt should be reformed, as it
incorrectly states that he pled "true" to the charges against him, rather than "not true." The State
agrees, as do we. (2)

 We reform the judgment to reflect that Bryant pled "not true" to the ground alleged against
him in the motion to adjudicate. As reformed, the judgment is affirmed.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 27, 2007

Date Decided: April 17, 2007


Do Not Publish


1. We also note that a supplemental record has now been filed that contains a capias issued
before the adjudication proceeding. 
2. The general rule is that, if we have the necessary data and evidence before us, we have the
authority to correct and reform a judgment to make the record speak the truth. French v. State, 830
S.W.2d 607 (Tex. Crim. App. 1992); Splawn v. State, 160 S.W.3d 103, 107 (Tex. App.--Texarkana
2005, pet. ref'd).



07 ad valorem taxes assessed against
the home. (2) Upon Michelle's request or with her acquiescence, the truck was repossessed and sold
by the entity holding the debt on it. 

 Sam filed a lawsuit against Michelle wherein he sought to invoke the indemnification clause
in the divorce decree and to secure him in the payment of the debts. The general gist of his petition
stated that he had paid some $4,340.69 to discharge debts that Michelle had been ordered to pay and
that he had incurred an additional $355.95 in expenses in an effort to preserve his credit rating from
damage caused by her failure to pay the debts. Sam also claimed that the truck repossession resulted
in a deficiency of $7,059.71, a sum being sought of him by the lender. The petition also sought:

 the imposition of a Priority or Purchase Money Lien on all property mentioned
herein, for a Turn Over Order ordering that all property for which the Plaintiff has not
been reimbursed at the time of the trial hearing be turned over to the
Plaintiff . . . [and] for foreclosure of the purchase money lien established herein.


 Michelle responded and a hearing was held on July 31, 2008, wherein the majority of the
evidence was presented as a joint stipulation; at some point in time, however, some of the particulars
of the rambling stipulation came into dispute and some other evidence was presented. Based upon
this hearing, the trial court entered three separate judgments, each dated December 19, 2008. These
judgments were: 

 (A) An "Indemnity Judgment," which ordered Michelle to pay Sam $9,429.69, to hold
him harmless from "any and all debts alleged to be due [to] Nuvell Financial Corporation or any
other debt arising from" the debt concerning the truck awarded to her in the divorce decree, and
"[l]ikewise . . . indemnify Sam Lavender from [the] sum of $7,059.71 which is claimed by Nuvell
Financial as a result of the foreclosure and forced sale without notice to Sam Lavender." This
judgment went on to recite that "All relief not expressly granted herein is hereby denied." 

 (B) An "Order of Foreclosure" which made the findings that Michelle had abandoned the
real property and that it was "not in any way the homestead of Michelle Lavender and Michelle
Lavender has no claim to such property as her homestead." This further granted Sam an interest-bearing judgment in the sum of $9,429.69, secured by a subrogation lien and an equitable vendor's
lien on the real property. The judgment then ordered the sale of the property as under execution with
the stipulation that any excess realized from the sale which exceeded the judgment amount was to
be paid to Sam. As with the judgment mentioned above, this judgment similarly recited that "All
relief requested in this case and not expressly granted is denied," but also added that "This judgment
finally disposes of all parties and claims and is appealable." 

 (C) The third judgment was entitled, "Judgment Establishing Lien and Foreclosure." It
reiterated the findings in the "Order of Foreclosure" that the real estate was not Michelle's homestead
and also repeated that Sam was given an equitable subrogation lien (but for an unspecified amount)
against the real estate, adding that this was also to be a lien against all real estate owned by Michelle
in Harrison County. This judgment contained no claims of finality.

 Michelle has appealed, complaining that the trial court erred in having entered three different
final judgments and further maintaining that the evidence was factually insufficient to support the
awards.

 Sam has responded by asserting that the "Judgment Establishing Lien and Foreclosure" is a
nullity and that the "Order of Foreclosure" vacated the "Indemnity Judgment," leaving the "Order
of Foreclosure" as the sole remaining final judgment. 

 There are some cases, such as in probate proceedings and receivership proceedings, (3) in which
more than one final, appealable judgment can be rendered. In all other cases, the long-standing rule
that "[o]nly one final judgment shall be rendered in any cause" applies. Tex. R. Civ. P. 301. 

 Certainly, there are circumstances in which there would appear to have been more than one 
judgment entered. For instance, there have been circumstances in which a purportedly final
judgment was rendered only to have another final judgment entered without any mention of the
second judgment having been for the purpose of setting aside the first. City of W. Lake Hills v. State
ex rel. City of Austin, 466 S.W.2d 722 (Tex. 1971). There are distinguishing factors here. In West
Lake Hills, almost a month intervened between the entry of the first purported judgment and the
second; the first judgment made no award of costs, whereas the second did. The court determined
that there were not two judgments, but only one--the second--and although the second judgment
did not specifically set aside the first, the court presumed that it replaced the first. Id. at 727.

 At one time, the Texas Supreme Court had taken the position that one key in determining
whether a judgment is a final one was to see if the judgment purported to dispose of all of the parties
and issues, most often by including what is sometimes known as a "Mother Hubbard" clause. (4)
Mafrige v. Ross, 866 S.W.2d 590 (Tex. 1993). However, because of the subsequent ubiquity of the
phraseology and because of its latent ambiguity in different contexts, the fact of the existence of a
Mother Hubbard clause in a judgment rendered it "inapt for determining finality." Lehmann v.
Har-Con Corp., 39 S.W.3d 191, 192-93 (Tex. 2001). For instance, variations of this Mother
Hubbard clause are contained in two of the three judgments rendered in this case. 

 Sam correctly points out that generally "any change in a judgment during the trial court's
period of plenary power should be treated as a modified, corrected, or reformed judgment that
'presumptively vacates' the trial court's former judgment unless the record indicates a contrary
intent." Quanaim v. Frasco Restaurant & Catering, 17 S.W.3d 30, 38 (Tex. App.--Houston [14th
Dist.] 2000, pet. denied). Sam further places reliance on Tindall v. Bishop, Peterson & Sharp, P.C.,
961 S.W.2d 248 (Tex. App.--Houston [1st Dist.] 1997, no writ). However, the situations in
Quanaim and Tindall do not mirror what we have here. In each of those cases, some days intervened
between the entry of the different "final" judgments; in each of those cases, a determination of the
chronology of entry of these judgments was evident on their faces. In other words, it was very
apparent in each circumstance that a purported final judgment had been entered and later (still during
the period of time before the trial court lost plenary jurisdiction) a second final judgment was entered
that contained no specific language purporting to set aside the first-entered judgment. In each of
those cases, it was correctly determined that the appeals court could infer that the intention of the
trial court was to set aside the first-entered judgment and replace it with a second, leaving only one
final judgment. Here, however, we have three separate judgments (two of which purported to finally
resolve all questions before the court), all of which were apparently entered simultaneously; each
was dated the same date and the clerk's file stamp showed they were each filed at 11:44 a.m. on the
same date. If they were not the subject of simultaneous entry, it is impossible to determine from the
record which judgment antedated another. Because it is impossible to determine which of these was
the last act of the court in granting judgment, it would be pure conjecture to speculate which of the
judgments acted to revoke another. As mentioned above, there can only be one final judgment in
a cause such as this. Not being clairvoyant, we are in no position to determine which of this spate
of judgments was intended to be the final judgment of the court and there is no time frame from
which we can infer the intention of the court that one of the judgments would supplant another.

 Cases in which simultaneous judgments have been entered in the same cause appear to be
extraordinarily rare in Texas. There is at least one suggestion that, faced with the entry of multiple
judgments, the judgments "must be read together as one final judgment." Rodriguez v. Seider,
No. 03-04-00454-CV, 2005 Tex. App. LEXIS 2374, at *4 (Tex. App.--Austin Mar. 31, 2005, no
pet.) (justice court entered one judgment on plaintiff's claim and another judgment on cross-claim
filed by defendant). 

 However, this situation does not lend itself to a blending of the judgments to read as one. 
One of the three judgments in this case made no award and two judgments each purport to grant Sam
a money judgment of $9,429.69. If the judgments are read together to be as if one judgment had
been granted, would it be proper to grant a solitary money judgment of $9,429.69 or have a judgment
that makes one award of that sum which is secured by a lien and another award of that amount which
is not secured by a lien? 

 One might consider abating this matter to the trial court to have it enter a judgment which
reflects its intention. However, we take judicial notice that the judge who entered this judgment is
now retired and has been replaced by another judge. Without going outside the existing record, the
new judge would likewise find it impossible to determine what was intended here. 

 As a result, we find that the trial court erred in entering three final judgments and therefore,
we set aside all of the judgments. Because this ruling is determinative of the appeal, we need not
proceed further to determine whether the evidence is factually sufficient to support a judgment. 

 We reverse the judgment of the trial court and remand for further proceedings. 



 Bailey C. Moseley

 Justice


Date Submitted: June 19, 2009

Date Decided: June 23, 2009


1. Presumably, this is both a manufactured home and the land upon which it was situated.
However, in the judgments rendered, there is no mention of a separate debt for each.
2. Sam did not seek enforcement for Michelle's share of the income taxes, if any. 
3. See Crowson v. Wakeham, 897 S.W.2d 779, 783 (Tex. 1995) (involving probate
proceedings); Huston v. Fed. Deposit Ins. Corp., 800 S.W.2d 845, 847 (Tex. 1990) (involving
receivership proceedings).
4. As used in this context, a Mother Hubbard clause recites that all relief requested and not
granted is denied.