**CITY OF PORT ISABEL,**
Texas, Appellant,

v.

**HP PINNELL, Trustee of Pinnell Trust and Town of South Padre Island, Appellees.**

No. 13–04–594–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 24, 2005.

Rehearing Overruled April 28, 2005.

Alan T. Ozuna, Ricardo J. Navarro, Denton, Navarro, Rocha & Bernal, Harlingen, for appellant.

Cobby Caputo, Matthew F. Stowe, Office of Atty. Gen., Bradley B. Young, Patricia L. Akers, Austin, R.K. Whittington, Law Office of R.K. Whittington, Harlingen, Horacio L. Barrera, Martinez & Barrera, Brownsville, for appellees.

Before and Justices HINOJOSA, RODRIGUEZ and GARZA.

## OPINION

Opinion by Justice GARZA.

In this interlocutory appeal, the City of Port Isabel challenges the trial court's denial of its plea to the jurisdiction, which sought dismissal of a suit for injunctive and declaratory relief filed by H.P. Pinnell and the Town of South Padre Island, as an intervenor. Because we conclude that Pinnell and the Town of South Padre Island each have standing to sue the City of Port Isabel, we affirm the trial court's order denying the plea to the jurisdiction.

### I. Background

This lawsuit arises from a dispute between the City of Port Isabel, the Town of South Padre Island ("SPI"), and Pinnell over which municipality should control certain unincorporated land. Port Isabel, a home-rule municipality with just over 5,000 inhabitants, is located on the mainland of Texas and borders on a body of water known as the Laguna Madre. SPI, a general law municipality, is located on a long, narrow coastal barrier island known as South Padre Island ("the Island"). Port Isabel is separated from the Island by a body of water called the Laguna Madre. The only means of access to and from the Island (other than by water or air) is the 2½ mile long Queen Isabella Memorial Causeway. Pinnell is the owner of land located on the Island that consists of approximately 460 acres. The Pinnell Property is located north of SPI and approximately six miles from Port Isabel.

Port Isabel contends that it should have control of the Pinnell Property, while SPI and Pinnell contend that SPI should have control. A series of conflicting ordinances were passed by Port Isabel and SPI under which each municipality now claims control of the Pinnell Property. The ordinances and the present lawsuit unfolded as follows.

Between July and August of 2003, Port Isabel adopted three separate ordinances that purported to annex an area located entirely in the Laguna Madre.[1] The ordinances extended Port Isabel's boundary fifteen miles into the water, with each ordinance extending the boundary by five miles. In February 2004, Port Isabel scheduled and posted notice of a public hearing to annex eighteen separate areas located entirely in the Laguna Madre. These areas were divided into one-mile

---

1. These were ordinances 627, 628, and 633.

units that covered essentially the same areas annexed by the prior ordinances. On February 4, 2004, Port Isabel sent notice to Pinnell that it intended to annex the Pinnell Property and that public hearings regarding the proposed annexation would be held on March 8–9, 2004. On February 24, 2004, Port Isabel's city commission met and adopted seventeen ordinances annexing approximately 23,270 acres located entirely within the Laguna Madre. These ordinances extended Port Isabel's boundary to the shores of the Island. Although the ordinances did not annex the Pinnell Property, ordinance 652 shifted Port Isabel's boundary to within one mile of the Pinnell Property. According to Port Isabel, this brought the Pinnell Property within its extraterritorial jurisdiction ("ETJ").

On March 8, 2004, SPI adopted an ordinance expanding its ETJ to include the Pinnell Property.[2] This ordinance was adopted in response to a request by Pinnell on February 23, 2004 and purports to be effective as of the date of Pinnell's request.[3] On March 29, 2004, Pinnell filed this action seeking injunctive relief and a judgment declaring Port Isabel's annexation ordinances invalid. On the same date, the trial court entered a temporary restraining order prohibiting Port Isabel from annexing the Pinnell Property. Subsequently, the trial court denied Pinnell's application for temporary injunctive relief. SPI then intervened in the lawsuit, seeking a permanent injunction against Port Isabel and a judicial declaration that the annexation ordinances adopted by Port Isabel are void *ab initio*.

On April 6–7, 2004, Port Isabel adopted three new ordinances annexing additional areas,[4] and on April 9–10, 2004, Port Isabel annexed the Pinnell Property by adopting Ordinance No. 657. Port Isabel then filed a comprehensive jurisdictional plea in the trial court, seeking dismissal of the claims filed by Pinnell and SPI. The trial court denied Port Isabel's plea on October 18, 2004, and Port Isabel filed this interlocutory appeal.[5]

Port Isabel raises four issues: (1) Pinnell and SPI lack capacity to sue Port Isabel for any procedural irregularities related to the passage of Port Isabel's annexation ordinances; (2) Pinnell and SPI lack standing to complain about the annexation ordinances; (3) SPI cannot bring a claim under the Texas Open Meetings Act because it is not an "interested person" and because its grievance is not cognizable under the open meetings act; and (4) SPI's claim under the Texas Public Information Act fails because the information act does not authorize a private party to seek declaratory or injunctive relief. Pinnell and SPI have filed separate briefs in response to Port Isabel's appeal, in which they argue that the trial court did not err by denying Port Isabel's plea to the jurisdiction. Additionally, the Office of the Attorney General has filed an *amicus curiae* brief in support of SPI.

## II. Analysis

 A plea to the jurisdiction contests the authority of a court to determine the subject matter of a cause of action. *Dolenz v. Tex. State Bd. of Med. Examin-*

---

2. This was ordinance 04–04.

3. A municipality may expand its extraterritorial jurisdiction if the owners of the area request the expansion. TEX. LOC. GOV'T CODE ANN. § 42.022(b) (Vernon 1999).

4. These were ordinances 658, 659, and 660.

5. This Court has jurisdiction to decide this appeal under section 51.014(a)(8) of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2004–05).

*ers,* 899 S.W.2d 809, 811 (Tex.App.-Austin 1995, no writ). Whether a court has subject matter jurisdiction is a matter of law and is reviewed de novo. *Hoff v. Nueces County,* 153 S.W.3d 45, 48 (Tex.2004) (per curiam). As the party seeking to invoke the trial court's jurisdiction, the plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). When reviewing a trial court's ruling on a plea to the jurisdiction, Texas appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Id.* We may also consider relevant evidence necessary to resolve the jurisdictional issues raised. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

### A. Capacity to Sue

▆ Port Isabel's first issue contends that neither Pinnell nor SPI has capacity to sue Port Isabel for any procedural irregularities related to the passage of Port Isabel's annexation ordinances because such complaints can be made only by the State of Texas in a *quo warranto* proceeding. In response, Pinnell and SPI argue that they do have capacity because the annexation ordinances are void *ab initio.* *See Alexander Oil Co. v. Seguin,* 825 S.W.2d 434, 436 (Tex.1991) ("The only proper method for attacking the validity of a city's annexation of territory is by a *quo warranto* proceeding, unless the annexation is wholly void."). Additionally, Pinnell and SPI argue that a plea to the jurisdiction cannot be granted based on a lack of capacity. We agree with this second contention.

▆ Capacity is a party's legal authority to sue or be sued. *See Davis v. City of Houston,* 869 S.W.2d 493, 494 n. 1 (Tex. App.-Houston [1st Dist.] 1993, writ de-

nied). Capacity is not a jurisdictional issue. *Mackie v. Guthrie,* 78 S.W.3d 462, 465 (Tex.App.-Tyler 2001, pet. filed) (citing *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex. 1996)). We therefore conclude that the trial court did not err by denying Port Isabel's plea based on capacity. Port Isabel's first issue is overruled.

### B. Standing to Sue

In its second issue, Port Isabel contends that neither Pinnell nor SPI have standing to sue. According to Port Isabel, Pinnell and SPI have no authority over the tracts of land covered by the ordinances other than ordinance 657 and therefore no standing to sue based on these ordinances. As for ordinance 657, Port Isabel contends that the complaints made by Pinnell and SPI allege no more than mere procedural irregularities in Port Isabel's exercise of its annexation authority, allegations which, even if true, cannot confer standing.

▆ Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. In reviewing a private party's standing to challenge an annexation, an appellate court must decide whether the challenge attacks the city's authority to annex the area in question or simply complains of some violation of statutory procedure. *Werthmann v. City of Fort Worth,* 121 S.W.3d 803, 806 (Tex. App.-Fort Worth 2003, no pet.). If the annexation is void because the city has no authority to annex, a collateral attack by private parties is permissible, *Hoffman,* 476 S.W.2d at 846; however, a private party must nonetheless suffer some burden peculiar to itself to acquire standing to sue, *West Lake Hills v. State,* 466 S.W.2d 722, 727 (Tex.1971). Because there are two distinct requirements for standing (i.e., a void ordinance and a special burden), our analysis proceeds in two parts.

### 1. Void Ordinances

Historically, Texas courts have held that an annexation ordinance exceeds a municipality's authority when the annexation (1) exceeds the statutory limits on size, (2) attempts to annex areas within the jurisdiction of another city, (3) attempts to annex areas not contiguous with city limits, or (4) attempts to annex an area with an open boundary description. *Alexander Oil,* 825 S.W.2d at 438 (citing illustrative case law). In addition, the local government code expressly states that "[a] municipality may annex area only in its extraterritorial jurisdiction unless the municipality owns the area." TEX. LOC. GOV'T CODE ANN. § 43.051 (Vernon 1999). The Texas Supreme Court has held that a municipality may not annex land in another municipality's ETJ without that municipality's consent. *City of Murphy v. City of Parker,* 932 S.W.2d 479, 481 (Tex.1996).

 It is not enough to allege mere irregularities in a city's exercise of its annexation authority. *See Werthmann,* 121 S.W.3d at 806 (citing *Alexander Oil,* 825 S.W.2d at 438). For instance, notice and hearing requirements are procedural limits on annexation and do not affect the municipality's authority to make the annexation. *City of San Antonio v. Hardee,* 70 S.W.3d 207, 212 (Tex.App.-San Antonio 2001, no pet.). Procedural irregularities may render the annexation voidable but not void. *See Werthmann,* 121 S.W.3d at 806 (citing *City of Balch Springs v. Lucas,* 101 S.W.3d 116, 122 (Tex.App.-Dallas 2002, no pet.)). An attack upon an annexation ordinance based on procedural irregularities must be made by the State in an action of *quo warranto. See Hoffman v. Elliott,* 476 S.W.2d 845, 846 (Tex.1972) (per curiam).

 Pinnell's first amended original petition alleges that each of Port Isabel's ordinances is void *ab initio* due to annexations of areas (1) outside the City's ETJ, (2) not adjacent to or contiguous to the existing city limits, (3) with open boundaries that do not close, (4) located entirely within a body of water and not including land more than 1,000 feet in width at its narrowest point, and/or (5) located within the ETJ of another municipality. SPI's third amended petition in intervention alleges, *inter alia,* that Port Isabel has (1) enacted annexation ordinances that exceed the statutory size limit of one mile, (2) attempted to annex territory in SPI's ETJ, (3) attempted to annex territory that is not within its city limits, and (4) attempted to annex territory that contains an open boundary description.

The allegations made by Pinnell and SPI, if proven true, would establish that at least one of Port Isabel's annexation ordinances is void. *See* TEX. LOC. GOV'T CODE ANN. § 43.051; *City of Parker,* 932 S.W.2d at 481; *Alexander Oil,* 825 S.W.2d at 438. All subsequent ordinances that depend on the void ordinance would also be void. *See West Lake Hills,* 466 S.W.2d at 729. Thus, if Pinnell and SPI succeed in establishing that any one of Port Isabel's annexation ordinances is void, ordinance 657, which depends on each of the other ordinances, will also be void. In short, the claims brought by Pinnell and SPI are not complaints of mere irregularities in Port Isabel's exercise of its annexation authority; they are complaints that the ordinances are void. Accordingly, the suits are permissible and need not be brought by the State in a *quo warranto* proceeding. *See Hoffman,* 476 S.W.2d at 846.

### 2. Special Burden

 We turn now to the second requirement for standing: a special burden. Most commonly the special burden required for standing to challenge a city's annexation ordinance is the imposition of

tax. *West Lake Hills,* 466 S.W.2d at 727. A special burden does not exist if the claimant merely alleges the ordinary consequences of annexation that burden the general public. *See Sunchase Capital Group, Inc. v. City of Crandall,* 69 S.W.3d 594, 596 (Tex.App.-Tyler 2001, no pet.).

■ We conclude that the disputed annexation ordinances have created special burdens for both Pinnell and SPI. If the ordinances are allowed to stand, Pinnell will be taxed by Port Isabel and SPI's ETJ will be annexed by Port Isabel.[6] Because the entire series of annexation ordinances adopted by Port Isabel is necessary to annex the disputed land on the Island (i.e., the Pinnell Property and SPI's ETJ), we conclude that both Pinnell and SPI have standing to challenge all of the disputed ordinances. *See City of Northlake v. E. Justin Joint Venture,* 873 S.W.2d 413, 416–17 (Tex.App.-Fort Worth 1994, writ denied); *Missouri City v. Senior,* 583 S.W.2d 444, 446 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Port Isabel argues that Pinnell and SPI have no standing to challenge the entire series of annexation ordinances passed by Port Isabel because only ordinance 657 actually annexed the disputed land and created a special burden for Pinnell and SPI. We disagree. On its own, ordinance 657 would not have imposed a special burden on Pinnell and SPI because, on its own, ordinance 657 would be void. The validity of ordinance 657 depends on the validity of the other ordinances that extended Port Isabel's city limits to the shores of the Island. Without these ordinances, ordinance 657 would be of no effect. We therefore conclude, as other courts have in similar situations, that the special burdens on Pinnell and SPI were imposed by not only ordinance 657 but by all the ordinances on which ordinance 657 depends. *See E. Justin Joint Venture,* 873 S.W.2d at 416–17; *Senior,* 583 S.W.2d at 446.

For instance, in *Senior,* the claimants' land was annexed by ordinance 116. *Senior,* 583 S.W.2d at 446. The claimants filed suit against the municipality, arguing that ordinance 102, on which ordinance 116 depended, was void. *Id.* The municipality argued that the claimants lacked standing to challenge ordinance 102, but both the trial court and the court of appeals concluded that the claimants did have standing because ordinance 116 depended on ordinance 102. *Id.*

Similarly, in *E. Justin Joint Venture,* the court concluded that a landowner had standing to challenge the validity of a conversion ordinance that transformed a municipality into a type-A general law municipality because it was "arguably ... necessary" for the annexation of the claimant's property. *E. Justin Joint Venture,* 873 S.W.2d at 416–17. According to the court, the conversion ordinance caused "peculiar harm" to the claimant and therefore conferred standing to sue. *Id.* at 417.

For the foregoing reasons, we conclude that Pinnell and SPI have standing to sue. Port Isabel's second issue is overruled.

---

6. We emphasize that the standard of review applicable to this appeal precludes this Court from deciding the merits of SPI's contention that its ETJ expansion covering the Pinnell Property occurred prior to Port Isabel's ETJ expansion. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446. Instead, we must take the allegations of SPI's petition as true. *See id.* The so-called first-in-time issue must be decided as part of the case on the merits. *See Univ. of Tex. Med. Branch v. Hohman,* 6 S.W.3d 767, 771 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) ("Our task is not to determine whether the plaintiff ultimately wins or loses on judicial review; rather, this Court's task is to examine the facts pleaded and to determine whether those facts support jurisdiction in the trial court.").

## C. Texas Open Meetings Act

■ In its third issue, Port Isabel argues that the trial court erred by denying its plea to the jurisdiction based on SPI's inability to bring a claim under the Texas Open Meeting Act. According to Port Isabel, "[The] Town does not have capacity or standing to collaterally attack an annexation order, [and] it [therefore] makes no practical sense that it could accomplish the same result through the vehicle of an Open Meetings violation."

A city's annexation may be challenged under the Texas Open Meetings Act, which provides guidelines for standing to sue that are different from the common law test discussed above:

> An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

TEX. GOV'T CODE ANN. § 551.142 (Vernon 2004); *see also Hardee,* 70 S.W.3d at 212–13. Port Isabel argues that SPI is not an "interested person," but it fails to make any argument other than those related to capacity and standing under the common law. We have noted that capacity is not a jurisdictional issue and is, therefore, not a basis to dismiss for lack of jurisdiction. *See Mackie,* 78 S.W.3d at 465. Additionally, we have concluded that SPI has standing under the common law because it alleges that Port Isabel's annexation ordinances are void and because it further alleges that the ordinances directly affect it in a manner different from the general public (i.e., they annex SPI's ETJ).

As we have noted previously, "The majority of courts addressing the 'interested person' requirement have adopted an extremely broad interpretation regarding who constitutes an 'interested person.'" *Matagorda County Hosp. Dist. v. City of Palacios,* 47 S.W.3d 96, 102 (Tex.App.-Corpus Christi 2001, no pet.) (citing illustrative case law). For instance, the Austin court concluded that standing under the Texas Open Meetings Act is broader than under the common law. *See Save Our Springs Alliance, Inc. v. Lowry,* 934 S.W.2d 161, 163 (Tex.App.-Austin 1996, orig. proceeding) (per curiam). The court reasoned that the interest protected by the Texas Open Meetings Act is the interest of the general public. *Id.* We have concluded that SPI has an interest more particularized than that of the general public because its ETJ is directly affected by the disputed ordinances; however, SPI also shares the general public's interest in ensuring that the protections of the Texas Open Meetings Act are enforced. We therefore conclude that SPI is an "interested person" and has standing to sue under the Texas Open Meetings Act.

■ Port Isabel also argues that the trial court should have granted its plea to the jurisdiction because SPI has failed to state a valid claim under the open meetings act. We disagree. Failure to state a claim is a defect which should be challenged by special exceptions, not by a plea to the jurisdiction. *See Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *Centennial Ins. Co. v. Commercial Union Ins. Cos.,* 803 S.W.2d 479, 483 (Tex.App.-Houston [14th Dist.] 1991, no writ) ("Although FED.R.CIV.P. 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted, the Texas Rules of Civil Procedure do not contain any analogous provision. Under the Texas Rules of Civil Procedure, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception."). If the pleading deficiency is of the type that cannot be cured by an amendment, a special exception is unnecessary and a take-noth-

ing summary judgment based on the pleadings' failure to state a legal claim is in order. *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 704 (Tex.App.-Houston 1987, writ denied). The trial court did not err by denying Port Isabel's plea to the jurisdiction based on SPI's failure to state a claim under the open meetings act.

Port Isabel's third issue is overruled.

### D. Texas Public Information Act

In its fourth issue, Port Isabel contends that the trial court erred by denying its plea to the jurisdiction based on SPI's failure to "plead itself to be within the statutory requirements for asserting a violation of the Public Information Act." Port Isabel argues that SPI "does not have the capacity to independently initiate a declaratory or injunctive action against the City of Port Isabel."

 As we have noted, capacity is not a jurisdictional issue and therefore not a basis for granting a plea to the jurisdiction. *See Mackie*, 78 S.W.3d at 465. We understand Port Isabel's fourth issue as also complaining of the relief sought by SPI under the information act (i.e., declaratory and injunctive relief). This is a pleading defect, which is properly challenged by a special exception, not by a plea to the jurisdiction. *See Fort Bend County v. Wilson*, 825 S.W.2d 251, 253 (Tex.App.-Houston [14th Dist.] 1992, no writ) ("Under the Texas Rules of Civil Procedure, a special exception is the appropriate vehicle for urging that the plaintiff has failed to plead a cause of action, and the pleader must be given, as a matter of right, an opportunity to amend the pleading.") (citing *Moseley v. Hernandez*, 797 S.W.2d 240, 242 (Tex.App.-Corpus Christi 1990, no writ)). Port Isabel's fourth issue is overruled.

### III. Conclusion

We affirm the judgment of the trial court.