COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-032-CV

TOWN OF FLOWER MOUND, TEXAS APPELLANT

V.

JAMES C. SANFORD AND SUSAN 

SANFORD APPELLEES

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

The Town of Flower Mound, Texas appeals the trial court’s denial of its plea to the jurisdiction in a suit brought by Appellees James C. Sanford and Susan Sanford challenging both Flower Mound’s annexation of property and an interlocal boundary agreement between Flower Mound and the Town of Bartonville, Texas (the “Boundary Agreement”).  In four issues on appeal, Flower Mound argues that the trial court should have granted the plea to the jurisdiction because (1) the Sanfords’ allegations against Flower Mound’s annexation are moot; (2) the Sanfords’ lawsuit violates the separation of powers doctrine; (3) the Sanfords have no standing to complain about annexation proceedings; and (4) the Sanfords have no standing to complain about the Boundary Agreement.  Because we hold that the Sanfords do not have standing to assert their claims, we reverse the trial court’s denial of Flower Mound’s plea to the jurisdiction and dismiss the Sanfords’ claims.

Facts
 
and Procedural History

On November 16, 2006, the Sanfords filed suit against Flower Mound.  Their petition alleged that they owned property in territory that Flower Mound was attempting to annex.  They sought a temporary restraining order, a temporary injunction, and a permanent injunction preventing Flower Mound from annexing the property.  They also sought a declaratory judgment  that the Boundary Agreement between Flower Mound and Bartonville was unconstitutional pursuant to the Texas Constitution, Article III, sections 50, 51, 52, and 53;
(footnote: 2) that the agreement was void for failure to properly comply with Texas Government Code section 791.011;
(footnote: 3) and that any attempted annexation of the property at issue would be void for failure to prepare and/or provide a proper annexation plan.  The trial court granted the temporary restraining order on November 16, 2006, but denied the Sanfords’ application for a temporary injunction on November 30, 2006.  The temporary restraining order was extinguished at that time. 

On December 18, Flower Mound enacted Ordinance 83-06, annexing the property at issue.  Flower Mound then filed a plea to the jurisdiction to address the Sanfords’ remaining claims, arguing that the lawsuit was mooted by the enactment of the ordinance.  Flower Mound also argued that the trial court had no subject matter jurisdiction because the Sanfords’ request to enjoin Flower Mound from annexing the property violated the separation of powers doctrine and that the Sanfords did not have standing because a complaint about Flower Mound’s annexation procedures can only be raised by an action in
 quo warranto 
brought by the State.  Finally, Flower Mound claimed that the Sanfords did not have standing to challenge the Boundary Agreement because they were not parties to the agreement or third-party beneficiaries of the agreement; nor, Flower Mound claimed, did the Sanfords have taxpayer standing because contrary to the allegations in their petition, they do not own the disputed property.  On January 18, 2007, the trial court denied Flower Mound’s plea to the jurisdiction.  This interlocutory appeal followed.

Standard of Review

Whether a trial court has subject-matter jurisdiction is a question of law, which we review de novo.
(footnote: 4)  Standing is a component of subject matter jurisdiction and is “essential to the authority of a court to decide a case.”
(footnote: 5)  We therefore review de novo a trial court's order denying a jurisdictional plea based on standing.
(footnote: 6)  In deciding a plea to the jurisdiction, a court “is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised[,]” confining itself “to the evidence relevant to the jurisdictional issue.”
(footnote: 7)
 If the plaintiff’s pleadings fail to allege facts sufficient to demonstrate the trial court's jurisdiction, ordinarily the trial court should give the plaintiff an opportunity to amend.
(footnote: 8)  If the pleadings affirmatively negate the existence of jurisdiction, however, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend.
(footnote: 9)  Further, if the plea to the jurisdiction attacks the existence of jurisdictional facts, evidence on the jurisdictional issue is submitted, and the evidence is undisputed or does not raise a fact question, the trial court rules on the plea to the jurisdiction as a matter of law.
(footnote: 10)
Analysis

We first consider Flower Mound’s issues with respect to the Sanfords’ standing.  A plaintiff must have standing to litigate a claim.
(footnote: 11)  In its fourth issue, Flower Mound asserts that the Sanfords do not have standing to complain about the Boundary Agreement.  

A plaintiff has standing if the plaintiff is personally aggrieved.
(footnote: 12)  The plaintiff must have an interest “peculiar to [the plaintiff] individually and not as a member of the general public.”
(footnote: 13)  The Sanfords do not allege that they have suffered a particularized injury peculiar to themselves; instead, they argue that they have standing because they are taxpayers and seek to enjoin illegal expenditures of public funds under the Boundary Agreement.  Through an exception to the particularized injury requirement, a taxpayer has standing “to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury.”
(footnote: 14)  Implicit in this exception, however, is the requirement that the plaintiff is a taxpayer.
(footnote: 15)
 In 
Williams v. Lara
, the plaintiff “[did] not own property and thus [did] not pay property taxes.”
(footnote: 16)  She alleged that  paying rent on her residence gave her taxpayer status, but the Texas Supreme Court held that because she was not liable to the county for the tax on the rental property, she was not a taxpayer.
(footnote: 17)  Thus the Sanfords are not taxpayers merely because they live on property subject to taxation by Flower Mound, the entity whose allegedly illegal expenditures they seek to enjoin.  They must be liable for the tax on the property.
(footnote: 18)
 The tax assessor for each political unit of the state (including towns) that is authorized to and does impose ad valorem taxes on property is required by statute to prepare and mail a tax bill to each person in whose name the property is listed on the tax roll.
(footnote: 19)  The tax roll is prepared by the appraisal district in which that political unit participates and includes the property taxable by that taxing unit.
(footnote: 20)  Thus, if the appraisal district lists a particular person as owning property in the part of an appraisal district subject to taxation by a political unit, the tax bill from that unit for that property will be sent to that person.  Flower Mound established that the Sanfords are not listed by the applicable appraisal district as owning the property at issue.  The trial court admitted records from the Denton County Appraisal District showing that the property at 6001 Pine Valley, which the Sanfords in their petition claimed to own, is actually owned by SPE Enterprises, LP.  The Sanfords admitted that they do not directly own the property at issue and that the property is owned by SPE Enterprises, LP, an entity owned by the Sanfords’ individual trusts.  The fact that the Sanfords are not on the tax roll and are not persons billed for taxes with respect to the property was thus established as a matter of law.

The Sanfords argue that they are taxpayers nevertheless because they are contractually obligated to pay the taxes even though they do not own the property directly.  Assuming that a contractual obligation to pay taxes confers taxpayer status, the Sanfords did not provide sufficient evidence as to any such obligation.  They admitted into evidence, over Flower Mound’s objection, a check payable to the Denton County Tax Assessor with the words “6001 Pine Valley FM” on the “for” line.  Susan testified that the check was for payment of taxes assessed on the property.  The check itself is evidence that a payment was made to the Denton County Tax Assessor for some reason, but it does not establish that the Sanfords wrote the check in any capacity other than as volunteers.
(footnote: 21)  The check does not establish that the Sanfords had an obligation to pay taxes on the property.

Further, the testimony of Susan Sanford, even combined with the check, does not establish that the Sanfords were contractually obligated to pay the taxes.  The testimony elicited on cross-examination was as follows:

Q.  [by Flower Mound’s attorney].  When you say contractually obligated, what are you referring to?

A.  Well, I’m referring to the fact that that’s my home, and everything that is paid for that home I pay.  I have lived there five and a half years, and all the expenses are paid by me.

Q.  Is there a separate legal document such as a contract between you and SPE Enterprises?

A.  I’m certain that there is, but — I’m certain there is.

Q.  You don’t have it?

A.  I don’t have it with me, no.

Q.  Who would know about that?

A.  Well, I would know typically, but I hadn’t thought about this question.  My husband probably knows.  [The trustee] probably knows.  He probably has the documents in his office, along with the copies of my personal trust, my husband’s personal trust that own that entity.

No copy of the contract was offered into evidence, no one testified as to its substance, and neither James nor the trustee testified.  Susan’s testimony may be some evidence of her belief that she is contractually obligated to pay the taxes on the property, but it does not establish that she is actually so obligated.  The Sanfords therefore did not produce evidence sufficient either to establish that or to raise a fact question as to whether they are taxpayers.  We therefore hold that the Sanfords do not have taxpayer standing to complain about the Boundary Agreement.  Accordingly, we sustain Flower Mound’s fourth issue.

Flower Mound argues in its third issue that the Sanfords do not have standing to complain about the annexation.  Although the basis for Flower Mound’s argument under this issue does not include a discussion of the Sanfords’ taxpayer status, the fact that the Sanfords are not taxpayers on the property is relevant to resolving the issue.

The Sanfords contend that because they are asserting that the annexation ordinance is void and because there is a threat of taxation for them under this ordinance, they have met the standing requirement.  It is true that a private citizen has standing to challenge a void annexation ordinance if the private citizen shows a special burden under the ordinance.
(footnote: 22)  And the showing of the potential imposition of a tax on the plaintiff has been held to satisfy the special burden requirement.
(footnote: 23)  But as discussed above, the Sanfords have not shown that they are under a threat of taxation.  The Sanfords asserted no other grounds for standing to complain about the annexation.  We therefore hold that the Sanfords do not have standing to challenge the annexation.

The Sanfords argue that they are under a threat of taxation and therefore have standing because they are beneficial owners of the property, citing 
Caso-Bercht v. Striker Industries
(footnote: 24) for support.  That case addresses standing in an action brought by the beneficial owners of stock
(footnote: 25) and is not relevant.  The issue here is whether the Sanfords are under threat of taxation.  Regardless of whether or not they are beneficial owners of the property, and the record does not establish that they are, nothing in the record shows that they are under a threat of taxation.  We sustain Flower Mound’s third issue.  Because we sustain Flower Mound’s third and fourth issues, we need not address its first two issues.
(footnote: 26)

The Sanfords’ Motion to Dismiss

On February 16, 2007, after Flower Mound had filed its notice of appeal, the Sanfords filed their first amended original petition, adding plaintiffs and adding Bartonville as a defendant.  On February 20, 2007, Flower Mound filed an objection to the Sanfords’ amended petition and a notice that all proceedings in the trial court had been stayed as a matter of law pending the appeal.  On February 21, 2007, Flower Mound filed in this court a motion for a temporary order staying all proceedings in the district court, which we granted on March 12, 2007.

On March 5, 2007, without explicitly repealing Ordinance 83-06, Flower Mound enacted Ordinance 13-07, annexing the same land as covered by 83-06. The second ordinance states that the property in question has already been annexed by Flower Mound but that a legal challenge was made to the prior annexation, and it further provides that Flower Mound instituted the second ordinance to address that legal challenge and to provide that the territory is indeed annexed.

On April 30, 2007, the Sanfords filed in this court a motion to dismiss part of this appeal as moot.  They argue that by enacting the second annexation ordinance, Flower Mound repealed the first annexation ordinance, thereby mooting Flower Mound’s argument as to the Sanfords’ complaints about the annexation.  Because we do not reach Flower Mound’s argument that the Sanfords’ complaints about the annexation are moot, we need not reach the Sanfords’ argument that Flower Mound’s argument is itself moot.
(footnote: 27)
 The Sanfords also contend that we should dismiss as moot Flower Mound’s argument that they have no standing because they are not direct owners of the property.  They claim that they filed amended pleadings in the trial court adding plaintiffs and that this filing moots Flower Mound’s argument.  Because the additional plaintiffs are not before this court on appeal, and because the existence of additional plaintiffs has no relevance to the question of whether the Sanfords themselves have standing,
(footnote: 28) we overrule the Sanfords’ argument.  We deny the Sanfords’ motion to dismiss part of Flower Mound’s appeal.

Conclusion

Having sustained Flower Mound’s third and fourth issues, we reverse the trial court’s denial of Flower Mound’s plea to the jurisdiction and render judgment dismissing the Sanfords’ claims.
(footnote: 29)

LEE ANN DAUPHINOT

JUSTICE

PANEL M: LIVINGSTON, DAUPHINOT, and WALKER, JJ. 

DELIVERED:  August 31, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Tex. Const.
 art. III, §§ 50, 51, 52, 53.

3:
Tex. Gov’t Code Ann.
 § 791.011 (Vernon Supp. 2006).

4:
Tex. Natural Res. Conservation Comm'n v. IT-Davy
, 74 S.W.3d 849, 855 (Tex. 2002).

5:
Tex. Ass'n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 443, 445 (Tex. 1993); 
Brunson v. Woolsey
, 63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no pet.).

6:
See IT-Davy
,
 
74 S.W.3d at 855 (reviewing de novo the denial of a jurisdictional plea based on sovereign immunity).

7:
Bland ISD v. Blue
, 34 S.W.3d 547, 555 (Tex. 2000)
; 
see also
 
Tex. Dep’t of Parks & Wildlife v. Miranda
, 133 S.W.3d 217, 227-28 (Tex. 2004).

8:
OHBA Corp. v. City of Carrollton
, 203 S.W.3d 1, 6 (Tex. App.—Dallas 2006, pet. denied) (citing 
Miranda
, 133 S.W.3d at 227-28).

9:
Id.

10:
Id.

11:
Hunt v. Bass
, 664 S.W.2d 323, 324 (Tex. 1984); 
Dennis v. First State Bank of Tex.
, 989 S.W.2d 22, 27 (Tex. App.—Fort Worth 1998, no pet.).

12:
Nootsie
,
 Ltd. v. Williamson County Appraisal Dist.
, 925 S.W.2d 659, 661 (Tex. 1996).

13:
Hunt
, 664 S.W.2d at 324.

14:
Bland ISD
, 34 S.W.3d at 556.

15:
Williams v. Lara
, 52 S.W.3d 171, 179 (Tex. 2001).

16:
Id.

17:
Id.

18:
See id.

19:
Tex. Tax Code Ann. 
§ 31.01(a) (Vernon Supp. 2006); 
Id.
 § 1.04(12) (Vernon Supp. 2006) (defining “taxing unit” as “a county, an incorporated city or town (including a home-rule city), a school district, a special district or authority . . ., or any other political unit of this state . . . that is authorized to impose and is imposing ad valorem taxes on property even if the governing body of another political unit determines the tax rate for the unit or otherwise governs its affairs”).

20:
Id.
 § 26.01 (Vernon 2001).

21:
See Martin v. Republic Land Tech.
,
 L.L.C.
, 63 S.W.3d 34, 36 (Tex. App.—San Antonio 2001, pet. denied)
 
(“As a general rule, one who pays taxes due on property of another, without any request by the debtor or any contractual right to do so or any joint liability therefor, is a volunteer.”); 
see also Burkhardt v. Lieberman
, 138 Tex. 409, 419, 159 S.W.2d 847, 853 (Tex. 1942).

22:
See City of Port Isabel v. Pinnell
, 161 S.W.3d 233, 239-40 (Tex. App.—Corpus Christi 2005, no pet.).

23:
Id.

24:
Caso-Bercht v. Striker Indus.
, 147 S.W.3d 460 (Tex. App.—Corpus Christi 2004, no pet.).

25:
Id.
 at 464 (citing 
In re Penn Central Sec. Litig.
, 560 F.2d 1138, 1140 n.1 (3d Cir. 1977), which notes that “[t]he holding of stock in street name refers to the practice whereby a brokerage house registers its name on securities left with it by its customers.  Under this practice the brokerage house is known as the record holder of the stock and the actual purchaser of the stock is known as the beneficial owner,” and taking “judicial notice that the use of street names or corporate names by a purchaser of stock or securities is an accepted practice”).

26:
See 
Tex. R. App. P.
 47.1.

27:
See 
Tex. R. App. P.
 47.1.

28:
See Hunt
, 664 S.W.2d at 324 (stating that a person must have standing to maintain a suit).

29:
See 
Tex. R. App. P.
 43.2(c).