COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-032-CV

 

 

TOWN OF FLOWER MOUND,
TEXAS                                       APPELLANT

 

                                                   V.

 

JAMES C. SANFORD AND SUSAN 

SANFORD                                                                           APPELLEES

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








The Town of Flower Mound,
Texas appeals the trial court=s denial of its plea to the jurisdiction in a suit brought by
Appellees James C. Sanford and Susan Sanford challenging both Flower Mound=s annexation of property and an interlocal boundary agreement between
Flower Mound and the Town of Bartonville, Texas (the ABoundary Agreement@).  In four issues on appeal,
Flower Mound argues that the trial court should have granted the plea to the
jurisdiction because (1) the Sanfords= allegations against Flower Mound=s annexation are moot; (2) the Sanfords= lawsuit violates the separation of powers doctrine; (3) the Sanfords
have no standing to complain about annexation proceedings; and (4) the Sanfords
have no standing to complain about the Boundary Agreement.  Because we hold that the Sanfords do not have
standing to assert their claims, we reverse the trial court=s denial of Flower Mound=s plea to the jurisdiction and dismiss the Sanfords= claims.

Facts and Procedural History








On November 16, 2006, the
Sanfords filed suit against Flower Mound. 
Their petition alleged that they owned property in territory that Flower
Mound was attempting to annex.  They
sought a temporary restraining order, a temporary injunction, and a permanent
injunction preventing Flower Mound from annexing the property.  They also sought a declaratory judgment  that the Boundary Agreement between Flower
Mound and Bartonville was unconstitutional pursuant to the Texas Constitution,
Article III, sections 50, 51, 52, and 53;[2]
that the agreement was void for failure to properly comply with Texas
Government Code section 791.011;[3]
and that any attempted annexation of the property at issue would be void for
failure to prepare and/or provide a proper annexation plan.  The trial court granted the temporary
restraining order on November 16, 2006, but denied the Sanfords= application for a temporary injunction on November 30, 2006.  The temporary restraining order was extinguished
at that time. 








On December 18, Flower Mound
enacted Ordinance 83-06, annexing the property at issue.  Flower Mound then filed a plea to the
jurisdiction to address the Sanfords= remaining claims, arguing that the lawsuit was mooted by the
enactment of the ordinance.  Flower Mound
also argued that the trial court had no subject matter jurisdiction because the
Sanfords= request to enjoin Flower Mound from annexing the property violated
the separation of powers doctrine and that the Sanfords did not have standing
because a complaint about Flower Mound=s annexation procedures can only be raised by an action in quo
warranto brought by the State. 
Finally, Flower Mound claimed that the Sanfords did not have standing to
challenge the Boundary Agreement because they were not parties to the agreement
or third-party beneficiaries of the agreement; nor, Flower Mound claimed, did
the Sanfords have taxpayer standing because contrary to the allegations in
their petition, they do not own the disputed property.  On January 18, 2007, the trial court denied
Flower Mound=s plea to
the jurisdiction.  This interlocutory
appeal followed.

Standard
of Review

Whether a trial court has
subject‑matter jurisdiction is a question of law, which we review de
novo.[4]  Standing is a component of subject matter
jurisdiction and is Aessential to
the authority of a court to decide a case.@[5]  We therefore review de novo a
trial court's order denying a jurisdictional plea based on standing.[6]  In deciding a plea to the jurisdiction, a
court Ais not required to look solely to the pleadings but may consider evidence
and must do so when necessary to resolve the jurisdictional issues raised[,]@ confining itself Ato the evidence relevant to the jurisdictional issue.@[7]








If the plaintiff=s pleadings fail to allege facts sufficient to demonstrate the trial
court's jurisdiction, ordinarily the trial court should give the plaintiff an
opportunity to amend.[8]  If the pleadings affirmatively negate the
existence of jurisdiction, however, a plea to the jurisdiction may be granted
without allowing the plaintiff an opportunity to amend.[9]  Further, if the plea to the jurisdiction
attacks the existence of jurisdictional facts, evidence on the jurisdictional
issue is submitted, and the evidence is undisputed or does not raise a fact
question, the trial court rules on the plea to the jurisdiction as a matter of
law.[10]

Analysis

We first consider Flower
Mound=s issues with respect to the Sanfords= standing.  A plaintiff must
have standing to litigate a claim.[11]  In its fourth issue, Flower Mound asserts that
the Sanfords do not have standing to complain about the Boundary
Agreement.  








A plaintiff has standing if
the plaintiff is personally aggrieved.[12]  The plaintiff must have an interest Apeculiar to [the plaintiff] individually and not as a member of the
general public.@[13]  The Sanfords do not allege
that they have suffered a particularized injury peculiar to themselves;
instead, they argue that they have standing because they are taxpayers and seek
to enjoin illegal expenditures of public funds under the Boundary
Agreement.  Through an exception to the
particularized injury requirement, a taxpayer has standing Ato sue in equity to enjoin the illegal expenditure of public funds,
even without showing a distinct injury.@[14]  Implicit in this exception,
however, is the requirement that the plaintiff is a taxpayer.[15]








In Williams v. Lara,
the plaintiff A[did] not
own property and thus [did] not pay property taxes.@[16]  She alleged that  paying rent on her residence gave her
taxpayer status, but the Texas Supreme Court held that because she was not
liable to the county for the tax on the rental property, she was not a
taxpayer.[17]  Thus the Sanfords are not taxpayers merely
because they live on property subject to taxation by Flower Mound, the entity
whose allegedly illegal expenditures they seek to enjoin.  They must be liable for the tax on the
property.[18]








The tax assessor for each
political unit of the state (including towns) that is authorized to and does
impose ad valorem taxes on property is required by statute to prepare and mail
a tax bill to each person in whose name the property is listed on the tax roll.[19]  The tax roll is prepared by the appraisal
district in which that political unit participates and includes the property
taxable by that taxing unit.[20]  Thus, if the appraisal district lists a
particular person as owning property in the part of an appraisal district
subject to taxation by a political unit, the tax bill from that unit for that
property will be sent to that person. 
Flower Mound established that the Sanfords are not listed by the
applicable appraisal district as owning the property at issue.  The trial court admitted records from the
Denton County Appraisal District showing that the property at 6001 Pine Valley,
which the Sanfords in their petition claimed to own, is actually owned by SPE
Enterprises, LP.  The Sanfords admitted
that they do not directly own the property at issue and that the property is
owned by SPE Enterprises, LP, an entity owned by the Sanfords= individual trusts.  The fact
that the Sanfords are not on the tax roll and are not persons billed for taxes
with respect to the property was thus established as a matter of law.








The Sanfords argue that they
are taxpayers nevertheless because they are contractually obligated to pay the
taxes even though they do not own the property directly.  Assuming that a contractual obligation to pay
taxes confers taxpayer status, the Sanfords did not provide sufficient evidence
as to any such obligation.  They admitted
into evidence, over Flower Mound=s objection, a check payable to the Denton County Tax Assessor with
the words A6001 Pine
Valley FM@ on the Afor@ line.  Susan testified that the check was for
payment of taxes assessed on the property. 
The check itself is evidence that a payment was made to the Denton
County Tax Assessor for some reason, but it does not establish that the
Sanfords wrote the check in any capacity other than as volunteers.[21]  The check does not establish that the
Sanfords had an obligation to pay taxes on the property.

Further, the testimony of
Susan Sanford, even combined with the check, does not establish that the
Sanfords were contractually obligated to pay the taxes.  The testimony elicited on cross-examination
was as follows:

Q.  [by Flower Mound=s
attorney].  When you say contractually
obligated, what are you referring to?

 

A.  Well, I=m referring to the fact that
that=s my
home, and everything that is paid for that home I pay.  I have lived there five and a half years, and
all the expenses are paid by me.

 

Q.  Is there a separate legal document such as a
contract between you and SPE Enterprises?

 

A.  I=m certain that there is, but C I=m
certain there is.

 

Q.  You don=t have it?

 

A.  I don=t have it with me, no.

 

Q.  Who would know about that?

 








A.  Well, I would know typically, but I hadn=t
thought about this question.  My husband
probably knows.  [The trustee] probably
knows.  He probably has the documents in
his office, along with the copies of my personal trust, my husband=s
personal trust that own that entity.

 

No copy of the contract was
offered into evidence, no one testified as to its substance, and neither James
nor the trustee testified.  Susan=s testimony may be some evidence of her belief that she is
contractually obligated to pay the taxes on the property, but it does not
establish that she is actually so obligated. 
The Sanfords therefore did not produce evidence sufficient either to
establish that or to raise a fact question as to whether they are
taxpayers.  We therefore hold that the
Sanfords do not have taxpayer standing to complain about the Boundary
Agreement.  Accordingly, we sustain
Flower Mound=s fourth
issue.

Flower Mound argues in its
third issue that the Sanfords do not have standing to complain about the
annexation.  Although the basis for
Flower Mound=s argument
under this issue does not include a discussion of the Sanfords= taxpayer status, the fact that the Sanfords are not taxpayers on the
property is relevant to resolving the issue.








The Sanfords contend that
because they are asserting that the annexation ordinance is void and because
there is a threat of taxation for them under this ordinance, they have met the
standing requirement.  It is true that a
private citizen has standing to challenge a void annexation ordinance if the
private citizen shows a special burden under the ordinance.[22]  And the showing of the potential imposition
of a tax on the plaintiff has been held to satisfy the special burden
requirement.[23]  But as discussed above, the Sanfords have not
shown that they are under a threat of taxation. 
The Sanfords asserted no other grounds for standing to complain about
the annexation.  We therefore hold that
the Sanfords do not have standing to challenge the annexation.








The Sanfords argue that they
are under a threat of taxation and therefore have standing because they are
beneficial owners of the property, citing Caso-Bercht v. Striker Industries[24]
for support.  That case addresses
standing in an action brought by the beneficial owners of stock[25]
and is not relevant.  The issue here is
whether the Sanfords are under threat of taxation.  Regardless of whether or not they are beneficial
owners of the property, and the record does not establish that they are,
nothing in the record shows that they are under a threat of taxation.  We sustain Flower Mound=s third issue.  Because we
sustain Flower Mound=s third and
fourth issues, we need not address its first two issues.[26]

 

The
Sanfords= Motion to Dismiss

On February 16, 2007, after
Flower Mound had filed its notice of appeal, the Sanfords filed their first
amended original petition, adding plaintiffs and adding Bartonville as a
defendant.  On February 20, 2007, Flower
Mound filed an objection to the Sanfords= amended petition and a notice that all proceedings in the trial court
had been stayed as a matter of law pending the appeal.  On February 21, 2007, Flower Mound filed in
this court a motion for a temporary order staying all proceedings in the
district court, which we granted on March 12, 2007.








On March 5, 2007, without
explicitly repealing Ordinance 83-06, Flower Mound enacted Ordinance 13-07,
annexing the same land as covered by 83-06. The second ordinance states that
the property in question has already been annexed by Flower Mound but that a
legal challenge was made to the prior annexation, and it further provides that
Flower Mound instituted the second ordinance to address that legal challenge and
to provide that the territory is indeed annexed.

On April 30, 2007, the
Sanfords filed in this court a motion to dismiss part of this appeal as
moot.  They argue that by enacting the
second annexation ordinance, Flower Mound repealed the first annexation ordinance,
thereby mooting Flower Mound=s argument as to the Sanfords= complaints about the annexation. 
Because we do not reach Flower Mound=s argument that the Sanfords= complaints about the annexation are moot, we need not reach the
Sanfords= argument that Flower Mound=s argument is itself moot.[27]








The Sanfords also contend
that we should dismiss as moot Flower Mound=s argument that they have no standing because they are not direct
owners of the property.  They claim that
they filed amended pleadings in the trial court adding plaintiffs and that this
filing moots Flower Mound=s
argument.  Because the additional
plaintiffs are not before this court on appeal, and because the existence of
additional plaintiffs has no relevance to the question of whether the Sanfords
themselves have standing,[28]
we overrule the Sanfords=
argument.  We deny the Sanfords= motion to dismiss part of Flower Mound=s appeal.

 

 

 

 

 

Conclusion

Having sustained Flower Mound=s third and fourth issues, we reverse the trial court=s denial of Flower Mound=s plea to the jurisdiction and render judgment dismissing the Sanfords= claims.[29]

                                                    

LEE ANN DAUPHINOT

JUSTICE

 

PANEL M:   LIVINGSTON, DAUPHINOT,
and WALKER, JJ. 

DELIVERED: 
August 31, 2007











[1]See Tex. R. App. P. 47.4.





[2]Tex. Const. art. III, '' 50,
51, 52, 53.





[3]Tex. Gov=t Code Ann. '
791.011 (Vernon Supp. 2006).





[4]Tex.
Natural Res. Conservation Comm'n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002).





[5]Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443, 445
(Tex. 1993); Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.CFort
Worth 2001, no pet.).





[6]See
IT-Davy, 74 S.W.3d at 855 (reviewing de novo the denial of a
jurisdictional plea based on sovereign immunity).





[7]Bland
ISD v. Blue, 34 S.W.3d 547, 555 (Tex. 2000); see also
Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227‑28
(Tex. 2004).





[8]OHBA
Corp. v. City of Carrollton, 203 S.W.3d 1, 6 (Tex. App.CDallas
2006, pet. denied) (citing Miranda, 133 S.W.3d at 227‑28).





[9]Id.





[10]Id.





[11]Hunt
v. Bass, 664 S.W.2d 323, 324 (Tex. 1984); Dennis v. First State Bank of
Tex., 989 S.W.2d 22, 27 (Tex. App.CFort Worth 1998, no pet.).





[12]Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996).





[13]Hunt, 664
S.W.2d at 324.





[14]Bland
ISD, 34 S.W.3d at 556.





[15]Williams
v. Lara, 52 S.W.3d 171, 179 (Tex. 2001).





[16]Id.





[17]Id.





[18]See
id.





[19]Tex. Tax Code Ann. '
31.01(a) (Vernon Supp. 2006); Id. ' 1.04(12) (Vernon Supp. 2006)
(defining Ataxing
unit@ as Aa
county, an incorporated city or town (including a home‑rule city), a
school district, a special district or authority . . ., or any other political
unit of this state . . . that is authorized to impose and is imposing ad
valorem taxes on property even if the governing body of another political unit
determines the tax rate for the unit or otherwise governs its affairs@).





[20]Id. '
26.01 (Vernon 2001).





[21]See
Martin v. Republic Land Tech., L.L.C., 63 S.W.3d
34, 36 (Tex. App.CSan
Antonio 2001, pet. denied) (AAs a general rule, one who
pays taxes due on property of another, without any request by the debtor or any
contractual right to do so or any joint liability therefor, is a volunteer.@); see
also Burkhardt v. Lieberman, 138 Tex. 409, 419, 159 S.W.2d 847, 853 (Tex.
1942).





[22]See
City of Port Isabel v. Pinnell, 161 S.W.3d 233, 239‑40
(Tex. App.CCorpus
Christi 2005, no pet.).





[23]Id.





[24]Caso‑Bercht
v. Striker Indus., 147 S.W.3d 460 (Tex. App.CCorpus
Christi 2004, no pet.).





[25]Id. at
464 (citing In re Penn Central Sec. Litig., 560 F.2d 1138, 1140 n.1 (3d
Cir. 1977), which notes that A[t]he holding of stock in
street name refers to the practice whereby a brokerage house registers its name
on securities left with it by its customers. 
Under this practice the brokerage house is known as the record holder of
the stock and the actual purchaser of the stock is known as the beneficial
owner,@ and
taking Ajudicial
notice that the use of street names or corporate names by a purchaser of stock
or securities is an accepted practice@).





[26]See Tex. R. App. P. 47.1.





[27]See Tex. R. App. P. 47.1.





[28]See
Hunt, 664 S.W.2d at 324 (stating that a person must have standing to
maintain a suit).





[29]See Tex. R. App. P. 43.2(c).